**EVANS et al. v. BALL.    (No. 7979.)**

Court of Civil Appeals of Texas. San Antonio.
April 11, 1928.

Rehearing Denied May 9, 1928.

1. **Husband and wife** ⬦═209(2)—**Wife may sue husband's paramour for injuries from gunshot wounds without joining husband.**

Wife may sue husband's paramour for damages for injuries from gunshot wound without joining husband, where husband had abandoned her and was in open and adverse opposition to her in such action.

2. **Husband and wife** ⬦═209(2)—**Wife held within rights in making forceful protests to husband's paramour against illicit relationship.**

Wife *held* to be within rights in approaching husband's paramour and protesting, asking that criminal relations cease, even though she was forceful in protests and sometimes accompanied them with threats, since wife had right to protect home and defend good name of herself and children and to protect husband and rescue him from illicit relationship.

3. **Assault and battery** ⬦═39—**Evidence showing defendant intended to kill plaintiff justified exemplary damages in action for injuries from gunshot wound.**

In action for damages from gunshot wounds, evidence showing that defendant intended to kill plaintiff and would have killed her if safety had not slipped *held* to justify finding for exemplary damages.

4. **Assault and battery** ⬦═40—**$1,250 exemplary and $500 actual damages held not excessive for gunshot wound in stomach, inflicted by husband's paramour, causing disability for 8 weeks.**

$1,250 exemplary damages and $500 actual damages *held* not excessive for gunshot wound inflicted on plaintiff by husband's paramour following personal encounter in which parties were evenly matched, where plaintiff was shot in stomach, was in bed for 4 weeks from wound, suffered great loss of blood, and was partially disabled for 4 additional weeks.

5. **Evidence** ⬦═222(1)—**In action for injuries from gunshot wounds, evidence of defendant's admissions against interest showing state of mind held admissible without defendant being warned.**

In action for injuries from gunshot wounds, it was not error to allow witness in whose custody defendant was at time of arrest to testify without defendant having been warned as to her voluntary statements to show state of defendant's mind; such admissions against interest being admissible in civil suit whether party is warned or not.

6. **Appeal and error** ⬦═1054(1)—**In trial without jury, error in admitting evidence is harmless where other competent evidence supports judgment.**

In trial without jury, error in admitting testimony or in excluding it is not ground for re-
versing judgment where there is other competent evidence supporting judgment.

7. **Appeal and error** ⬦═1052(8)—**Where case is submitted on special issues, error in admitting evidence is harmless where competent evidence supports judgment.**

Where case is submitted on special issues, error in admitting or excluding testimony is not ground for reversing judgment where other competent evidence supports judgment.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Action by Mrs. Sally Carter Ball against Mrs. S. A. Evans and husband. Judgment for plaintiff, and defendants appeal. Affirmed.

Graham & Graham, of Brownsville, for appellants.

P. G. Greenwood, of Harlingen, for appellee.

COBBS, J. Appellee, Mrs. Sally Carter Ball, a married woman, sued Mrs. S. A. Evans and her husband, S. A. Evans, appellants herein, to recover $5,000 actual damages as the result of a gunshot wound inflicted by Mrs. S. A. Evans upon the person of appellee, wantonly, willfully, and maliciously, with the intent to take her life or to do her serious bodily harm. She also sued for the further sum of $5,000 as exemplary or punitive damages.

Appellants answered by general denial, and as a special defense alleged that she had so shot her in self-defense and for no other purpose, and that at the time the shot was fired the said Mrs. Evans had good reasons for believing and did honestly believe that it was necessary to fire the shot so fired by her in order to prevent the said Mrs. Ball from inflicting death or serious bodily injury upon her, the said Mrs. S. A. Evans, and that but for the fact that the said Mrs. Ball had unlawfully assaulted her, the said Mrs. Evans, and was in the act of committing a battery upon her without just cause or justification at the time said shot was fired, and but for the fact that the said Mrs. Evans was in fear for her life or of suffering some serious bodily injury at the hands of the said Mrs. Ball, Mrs. Evans would not have shot Mrs. Ball, and that she did shoot her only because of the fact that she was being assaulted by Mrs. Ball and honestly believed that her life was in danger or that she would be seriously injured.

The cause was submitted on special issues, and, on return of the verdict of the jury, answering the questions favorably to appellee, the court entered its judgment against the appellants for $1,750; $500 thereof being compensation for the actual injuries found by the jury to have been sustaind by appellee, and $1,250 being by way of exemplary damages.

─────────────────────────────────
⬦═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] The first complaint is made challenging the right of appellee to bring and maintain this suit without the presence of or joinder of her husband therein. It is alleged and proved: That the husband refused to join in the suit and had abandoned the wife and refused to contribute to her support, and that she and her children were in necessitous circumstances. That he was in open and adverse opposition to his wife in this suit, and, being in court at the time of the trial, testified in behalf of appellant, with whom he was charged as being guilty of illicit relations.

If ever a case could be presented to authorize the wife to disregard the husband and sue alone, this case presents one. There are many authorities authorizing such procedure. In the case of Nickerson v. Nickerson, 65 Tex. 281, Justice Stayton, writing the opinion for the court, said:

"Is it because the modes of procedure will not permit the enforcement of such a right? We can conceive of no such obstacle. There is no defect of parties. The wife may now maintain actions as though she had never been married."

The court further said:

"The law has wisely afforded a remedy for every wrong, and is not restrained by inflexible rules from adopting all such means as will protect the citizen in his personal security. Otherwise, when a woman is separated from her husband, she would become, as it were, an outlaw and unprotected from injuries to her person or property. This cannot be tolerated in a civilized country where laws exist and are enforced. After the husband and wife have separated, he, of all others, is usually the least inclined to vindicate the rights of the wife, and to protect her" rights of "person or property from injury. In such a case there must be a remedy. * * * Nor does the law give him the right to impose terms or conditions in a case like the present, upon which his wife may seek redress, through the channels of the law, for injuries she may have suffered in her person or property. Nor can the court in the exercise of a discretion impose such terms."

Judge Speer says, in his excellent book on Marital Rights in Texas, par. 438, p. 557, where the husband has abandoned the wife:

"She is authorized to take such steps as are necessary for the protection of her property whether it be by suit or otherwise; and in such cases, it can make no difference whether the suit be concerning her separate property or the community property, for, under such circumstances, she is not only joint owner of community property but entitled to its possession and control."

It is held in Davis v. Davis (Tex. Civ. App.) 186 S. W. 775:

"A married woman has as much interest in the community property as her husband, and has an equal right to its beneficial use. The right of the husband to sue alone for its recovery is incidental to his right to manage and control that class of property, and not upon any legal disability of the wife by reason of her coverture. The statutory right of the husband to exclusively manage and control the community property is based upon the assumption that he will discharge his obligations as the head of the family; that he will live with and support his wife and children, or be ready and willing to do so. Wright v. Hays, 10 Tex. 131, 60 Am. Dec. 200; Dority v. Dority, 96 Tex. 215, 71 S. W. 950, 60 L. R. A. 941. * * * When he abandons his duty, repudiates his connubial and parental obligations, and compels his wife to rely upon her own efforts, there is neither reason nor justice in continuing his statutory authority over the common property. Hence, an action by an abandoned wife alone is not so fundamentally defective that her petition will be disregarded and her suit treated as a nullity."

We overrule the assignment.

To say that a wife, who has been abandoned by her husband and has been shot down, wantonly, willfully, and cruelly, near unto death by the paramour of her husband, cannot sue without joining him, notwithstanding his refusal, would be a denial of a substantial right under all law. She did not sue for the alienation of her husband's affection, as she might have done, nor resort to an equitable action in the nature of an injunction to restrain the parties, but stands on this action for damages suffered in the nature of personal injuries. The appellant had not only taken appellee's husband away from her, broken up a happy home where there were children, but shot down the innocent wife and mother, wounding her almost unto death, causing her not only great pain but great mental and physical suffering as well. To say that the wife under Texas laws is deprived of her right to thus seek redress and compensation through the courts for her injuries, and cannot sue alone because she happens to be the wife of the man who participates in crime against her and forgets his duty and solemn vows, the highest on earth, to love, honor, and protect his wife and his home, would indeed be a travesty on justice and law, and the unoffending wife so outlawed would be put beyond the protection of a court of justice. Marriage is a divine institution, as well as a legal obligation, fostered by the Great Jehovah's command, that those who are joined together as man and wife "let no man put asunder," and the wife is entitled to the full benefits of and protection of all law.

[2] The jury found that appellant did not shoot appellee believing that, unless she did shoot her, Mrs. Ball, appellee, would inflict death upon her or serious bodily injury. At most, it was a "hairpulling" affair between two women seeming evenly matched, but at the time of the shooting appellant apparently had the better of the fight, and nothing serious happened until the appearance of the gun. The fight grew out of the objectionable relations that were existing between appellee's husband and the appellant for a period of time, perhaps for more than a year. It is

true, appellee was at all times protesting to her husband and to appellant to cease their criminal relations. She was forceful in her protests, and sometimes they were made with threats, but were always ignored by both parties and the relations persisted in. Appellee had great provocation and was within her rights in approaching appellant attempting to protect her home and defend the good name of herself and two children, and to protect her husband with whom she had lived for some sixteen years, and to rescue him from the illicit love relationship existing between him and appellant.

At the time of this little hairpulling affair appellant was in no danger of losing her life or of suffering great bodily injury that justified the use of the deadly weapon. What used to be an uncommon occurrence—a woman going armed for mortal combat with "sword and pistols by her side"—has gotten to be of too frequent an occurrence.

[3] The facts do not present a case in which the appellant could be justified in shooting down appellee. Fortunate indeed for appellant that death did not result from her wanton and illegal act. She was evidently bent upon mischief and desired to take the life of appellee. She was going armed for the purpose of slaying her. She was bearing a loaded pistol on her person; and there is some testimony tending to show that the ammunition was furnished by appellee's husband. It was a mutual "hairpulling" contest in which neither was seeming to get the better of the other; at least, appellee was not. The appellant was cool and deliberate, possessed of this dangerous instrumentality of death, saying:

"Let her come on. That isn't all I have, and if the safety had not slipped I would have gotten her."

This was said as they were separated. She further stated that but for the hanging of the shell in the automatic pistol, as described in the testimony, she would have killed appellee. It justifies the jury's finding for exemplary damages.

[4] On the question of damages, the testimony shows that appellee was shot in the stomach, the ball coming through her body and coming out about four inches from the backbone; that appellee was in bed some 4 weeks from the wound, suffered great loss of blood; she was partially disabled for some 4 additional weeks and that the wound continued to burn and smart; that there was all the symptoms of a continuous injury and nervous derangement, as shown by appellee's testimony and that of witness Dr. R. E. Utley and that of her son, Nyal Everett Ball.

The jury found that appellee was entitled to exemplary damages in the sum of $1,250, and $500 actual damages. Instead of the damages being excessive, we are inclined to think they are small under the circumstances of this case. There seems to be no exact rule to measure damages in such a case. They are to be governed by the facts and circumstances in each particular case. We overrule the assignment.

[5] Complaint is made that the court erred in allowing the witness in whose custody Mrs. Evans was at the time of her arrest to testify without appellant having been first warned as to her voluntary statements, to show the state of appellant's mind, that she intended to kill appellee the moment appellee laid her hand on her, and that the appellee was not getting advantage of her, and that she was holding appellee to her until she could get her gun, and that she put the gun against appellee's body and intended to empty it into her, but the safety did not work, and, when told the handkerchief was the cause of it she said:

"If the handkerchief was the cause of it, I am glad now because I intended to empty it."

Such statements would not, as a matter of course, be admissible in a criminal prosecution against a defendant who had not been first warned. Such admissions, however, by a party in a civil suit against his interests are always admissible, whether warned or not. Jones on Evidence in Civil Cases, par. 236, pp. 356–358.

[6, 7] The appellant has presented a very strong brief, discussing the many assignments presented, complaining of many rulings of the court. In trials without a jury, error in admitting testimony or in excluding same, where there is other competent evidence supporting the judgment, is no ground for reversing the judgment. Haskins v. Henderson (Tex. Civ. App.) 2 S. W. (2d) 864. We think that rule may be applied here, since such error, if any, was harmless.

We have separately examined each and every assignment for error, but do not think it necessary to discuss them in detail. We find no error pointed out that should require a reversal. See Pilar Garcia et al. v. Melquiades Garcia et al., 4 S.W.(2d) 257, decided by this court on February 20, 1928.

We think the case has been fairly tried and substantial justice administered, and the judgment is affirmed.