PANHANDLE EASTERN PIPE LINE COMPANY, Appellant,

v.

Sterling P. JACKSON et al., Appellees.

No. 6695.

Court of Civil Appeals of Texas. Amarillo.

Oct. 7, 1957.

Rehearing Denied Oct. 28, 1957.

Culton, Morgan, Britain & White, Amarillo, for appellant.

Sanders, Scott, Saunders & Smith, Amarillo, for appellees.

CHAPMAN, Justice.

Two cases were consolidated and tried . as one case in the Court below. As con-

solidated, this case involves an appeal by Panhandle Eastern Pipe Line Company from a judgment for damages awarded Sterling P. Jackson, Royal C. Jackson, Leona Lee Nash and Louie Kathryn Remmel, Trustees of the Sterling P. and Kate Jackson Trust, and Royal C. Jackson and Robert E. Jackson, Individually and as Trustees of the Jackson Trust, growing out of condemnation proceedings. Said proceedings were for the purpose, according to the pleadings of Panhandle Eastern Pipe Line Company, appellant, of establishing a right-of-way and easement 66 feet wide on which to construct a 4 to 8-inch pipe line across 4 sections of land and to operate and maintain thereon necessary drips, blow-offs, meterhouses, gates, and other appurtenances thereto, which will be used as an integral part of their Interstate Natural Gas Pipe Line Transportation System. The pipe line company will be hereafter referred to as appellants and the condemnees as appellees. The sections of land involved are 50 and 51, in Block 1, Washington County Railroad Company Survey and 19 and 22, in Block 2, SA&MG RR. Co. Survey, all located in Hansford County, Texas. The trial was to a jury on the following 4 Special Issues:

## "Special Issue No. 1

"What do you find, from a preponderance of the evidence, to be the reasonable market value of the surface of the land in the 66-foot easement across the lands of the defendants, subject to any valid oil and gas leases thereon, immediately before condemnation on the 15th day of May, 1956?

## "Special Issue No. 2

"What do you find, from a preponderance of the evidence, to be the reasonable market value of the surface of the land in the easement across the defendants' land subject to any valid oil and gas leases thereon, with the easement on it, which was obtained by the plaintiffs, immediately after the 13th day of June, 1956?

## "Special Issue No. 3

"What do you find, from a preponderance of the evidence, to be the reasonable market value of the surface of the remainder of the lands of this defendant, crossed by said easement, obtained by plaintiff and not included in its right of way, and subject to any valid oil and gas leases thereon, immediately before the condemnation of the easement on May 15, 1956.

## "Special Issue No. 4

"Excluding increase in value, if any, and decrease in value, if any, by reason of benefits received or injuries sustained by defendants in common with the community generally and not peculiar to them and connected with their ownership, use, and enjoyment of the lands across which the plaintiff obtained its right of way herein, and taking into consideration the uses to which the easement may be subjected by plaintiff, what do you find from a preponderance of the evidence was the market value of the surface of the remainder of Defendants' lands across which said easement was obtained by plaintiff, subject to the oil and gas leases thereon, immediately after the condemnation of said easement on June 13th, 1956, for pipeline purposes as in this charge detailed?"

To Issue No. 1, inquiring of the jury the reasonable market value of the surface of the land in the 66-foot easement across the lands of defendants immediately before condemnation, on the 15th day of May, 1956, they answered:

| | |
|---|---|
| For the 8.08 acres in Sec. 50? | $1010.00 |
| For the 6.23 acres in Sec. 51? | $ 778.75 |
| For the 6.17 acres in Sec. 22? | $ 771.25 |
| For the 3.48 acres in Sec. 19? | $ 348.00 |

To Issue No. 2, inquiring of the same as the issue above immediately after condemnation they answered:

| | |
|---|---|
| For the 8.08 acres in Sec. 50? | $ 404.00 |
| For the 6.23 acres in Sec. 51? | $ 311.50 |
| For the 6.17 acres in Sec. 22? | $ 308.50 |
| For the 3.48 acres in Sec. 19? | $ 174.00 |

To Issue No. 3, inquiring of the jury the reasonable market value of the surface of the remainder of the lands of defendants, crossed by said easement and not concluded in its right-of-way immediately before condemnation, they answered:

| | |
|---|---|
| For Section 50? | $78,990.00 |
| For Section 51? | $78,500 00 |
| For Section 22 east of railroad right-of-way | $52,500.00 |
| For Section 19 east of railroad right-of-way | $60,000.00 |

To the same question as the one just above, immediately after condemnation, they answered:

| | |
|---|---|
| For Section 50? | $73,934.00 |
| For Section 51? | $73,476.00 |
| For Section 22 east of railroad right-of-way | $49,140.00 |
| For Section 19 east of railroad right-of-way | $55,200.00 |

From the above verdict of the jury, the Court below rendered a judgment that appellant was entitled to condemn the right-of-way and easement prayed for and that Sterling P. Jackson and others recover the sum of $11,153.25 for damages to Sections 50 and 51 and that Royal C. Jackson and others recover the sum of $8,796.75 damages to Sections 19 and 22. From this judgment the appellant has perfected its appeal to this court.

In its first 4 assignments appellant complains that there was not any evidence of probative value to support the verdict and judgment; that there was insufficient evidence; that the verdict of the jury and judgment of the court was excessive, exorbitant, and unreasonable; and that the court erred in permitting the witness, Royal C. Jackson to give an opinion as to market value because such opinion was based entirely on hearsay offers to buy and sell.

Appellant permitted the witness, Royal C. Jackson, on direct examination to testify without objection that he had been farming since 1947; that he and a brother farmed five sections in Hansford County; that he has been acquainted with the county all his life; that he was 39 years of age; and that he is as familiar with the market value of land in that area as nearly as a person could be. Then when counsel for appellant took the witness on cross-examination he testified he had gained a knowledge in conversations with neighbors who had tried to buy and sell land. On further cross-examination the witness testified that he heard when he was in Gruver of a piece of land east of the land in question selling for $140 per acre. He also testified under further questioning of appellants' counsel that in his opinion a willing buyer and a willing seller would arrive at a figure of $120.00 an acre for Section 50, even with the knowledge of the oil and gas lease and of the rights under it.

From the testimony just related, appellant insists the case must be reversed because, under its contention, the uncontroverted evidence shows that such opinion is based entirely on hearsay knowledge of offers to buy and sell. When this assignment is considered in the light of all the testimony given by Royal C. Jackson and the record is considered as a whole, we have to disagree with appellants' contention. In the first place the witness showed at least some other knowledge of values. He had been familiar with the county all his life, owned an interest in some of the land in controversy, and had farmed there on an extensive basis for nine years. The record shows that all four sections were in the same general area of the county. With such experiences any intelligent person would acquire some knowledge of land values. The record shows he was engaged in the engineering business for seven years, which would indicate he was a man of some intelligence when such testimony is considered in connection with his other testimony in the record. These facts them-

selves would show his knowledge of the character of the land involved in his testimony, and the uses for which it is adapted and would itself be some evidence of knowledge of values. Houston Lighting & Power Co. v. Daily, Tex.Civ.App., 291 S.W. 317.

In Norris v. Lancaster, 280 S.W. 574, 576, the Commission of Appeals of Texas speaking through Judge Speer said:

"The rule undoubtedly is that, where it appears a witness' testimony is predicated both upon personal knowledge and upon hearsay, his testimony is admissible. * * * To exclude testimony upon the ground of hearsay, it must affirmatively appear that such testimony is wholly hearsay, and that the witness is not speaking as to matters otherwise within his own knowledge."

In State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 200, in a case by the Commission of Appeals, adopted by the Supreme Court, Judge German, speaking for the court quoted with approval from another authority as follows:

"Witnesses acquainted with the market value of the land seized may state their opinion of its value. It is essential that some acquaintance with the value of the land in the market should be shown, but *it is not material how the knowledge was obtained.*" (Emphasis added.)

In Texarkana & Ft. S. Ry. Co. v. Bell, 101 S.W. 1167, 1170, the Texarkana Court of Civil Appeals has said:

"Value, in a business sense, consists largely of the opinions of persons familiar with the market, and these opinions are largely made up of what is said or reported by others."

In Texas Pacific Coal & Oil Co. v. Taylor, Tex.Civ.App., 47 S.W.2d 1110, 1111, Judge Hickman, Chief Justice of the Supreme Court of Texas, speaking then as Chief Justice of the Eastland Court of Civil Appeals, said:

"The first assignment complains of the action of the trial court in permitting the witness R. L. Taylor to testify that he knew the reasonable cash market value of appellee's land immediately prior to the overflow of the salt water and immediately thereafter. The assignment further complains of the ruling of the trial court in refusing to strike this testimony after appellant had tested the qualification of the witness on cross-examination. This assignment presents no error. A witness as to land values does not ordinarily come within the definition of an expert. No rule can be formulated as to what constitutes a sufficient showing of qualification of a witness to give his opinion concerning the value of land, and it is generally held that the matter is very largely within the discretion of the trial court, and that an appellate court will not disturb the ruling of the trial court thereon, unless a clear abuse of discretion is shown. This witness had lived in the vicinity of this land for fourteen years. He unqualifiedly stated that he was acquainted with the market value of this tract of land immediately before and immediately after the overflow. Under that showing, the trial court did not abuse its discretion in permitting the witness to express his opinion as to the value on those dates."

In Premier Petroleum Co. v. Box, 255 S.W.2d 298, 300, the Court of Civil Appeals of Eastland, speaking through Judge Collings has said:

"The qualification of a witness to testify considering the market value of property is largely within the discretion of the trial court. Appellee Box was a farmer and owner of the land in question and testified that he knew its value. He was qualified under these circumstances to give his opinion of the value of the land."

In Texas Law of Evidence, McCormick and Ray, 2nd Edition, 3rd paragraph of Section 1422, p. 260, it is said:

"With respect to the establishment of the qualification it is usually said that the witness' own statement that he knows the value of the thing in question is sufficient to authorize the reception of his opinion, in the absence of a request from the adverse party for permission to cross-examine him at the outset for the purpose of showing that he does not possess the requisite knowledge, and the strength and weakness of his qualifications then go to the weight of his opinion."

See also Johnson v. Egert, Tex.Civ.App., 233 S.W.2d 958 (ref. N.R.E.); City of Houston v. Schorr, Tex.Civ.App., 231 S.W.2d 740 (writ dismissed); Wilson v. Barbour, Tex.Civ.App., 135 S.W.2d 169 (writ dismissed.)

In Housing Authority of City of Galveston v. Henderson, 267 S.W.2d 843, the Court of Civil Appeals of Galveston held that where a witness testified unequivocally that he knew the market value of the property in question, any contradictory evidence would have served, at the most, to weaken such prima facie showing.

In considering the complete record of the testimony of the witness, Jackson, we would have to say his testimony was properly admitted by the court below, but even if his testimony was incompetent it would not constitute reversible error when there is other competent evidence in the record. This court has so held in an opinion by Judge A. B. Martin wherein he said in Dillingham v. Currie, Tex.Civ.App., 92 S.W.2d 1122, 1127:

"The rule with supporting authorities is stated in 4 Texas S.W. Digest p. 631 [Appeal and Error ☞1050(1)], as follows: 'Where the other evidence was sufficient to determine the issue the admission of incompetent evidence is harmless error.'"

Counsel for appellant, through an able brief, particularly with respect to the forcefulness of his argument therein, takes to task each witness offered by appellee on value in the order in which they testified. He then concludes with the statement that their direct testimony was clear and unequivocal in qualifying as experts on market values, but that cross-examination disclosed beyond a shadow of doubt that none of them knew anything about the market value of the land in question. There is no doubt but that counsel did an excellent job in his cross-examination of the four value witnesses, Jackson, McClellan, Bort, and Cluck. But we find ourselves unable to agree with the positive statement that "none of appellee's witnesses knew anything about the market value of the land in question."

Mr. McClellan testified he owned land a few miles away, that he had lived in the county fifty-three years, had farmed all his life, and was generally familiar with farming conditions and operations in Hansford County. He testified he had been clerk for six years in the county, had filed many deeds for record, that at the time of the trial he was in the grain and implement business, that he had engaged in conversations with others in order to keep posted on what his own land was worth and that in the last ten years he had kept familiar with the going market price that land sold for in the county. He then gave his opinion of before and after values on all the three sections except 22, which he admitted under cross-examination he could not do, because of the other pipe lines on that section.

Mr. Bort testified he was fifty-eight years of age, ran a bank at Gruver, raised cattle, farmed, owned some land in the county, and traded and sold land himself. He testified he was familiar with the land inquired about and had been all the thirty years he had lived there, had been on it since the appellant put its pipe line across it, had been interested in and kept up with market values in the county and that land had been going up every day in that county, even through

dry years. On cross-examination he testified to knowledge of an actual sale within the last ten days and also of other sales. He also testified that, generally speaking, the land in the county all runs about the same value and testified to two sales of $105 an acre and $125 an acre, respectively. The record shows a most rigorous cross-examination by appellant's counsel, but Mr. Bort continued to assert facts and give experiences showing his knowledge of the land values he was testifying about and to place the values as he saw them.

Mr. Cluck testified he was forty-eight years of age, was engaged in farming and ranching, trades in land, had known the land in question for some time and through trading in land, learned land values. He also testified he had looked at the land in question and knew values of land in the county.

Each of the value witnesses mentioned and quoted from above gave their opinions on the before and after values inquired about. Appellant offered only one witness on values, E. C. Green. He testified he appraised land for loan companies and that he served as one of the commissioners who appraised the land in question for the purpose of the condemnations. His testimony, in substance, was that the land in question was not damaged any by the 66-foot easement and the rights to the pipe line company attendant thereon. From these five witnesses the jury answered that the parties were damaged in sums, in most instances, of less than half of the amounts testified to by appellees' four witnesses.

Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151, by the Supreme Court of Texas is a case closely parallel to our own on questions raised by appellant concerning the jury's findings on before and after market values. The Hunt case had the question of other pipe lines in existence and also the question of the evidence not being of sufficient probative force to sustain the jury's verdict. Judge Cramer, writing for the Dallas Court of Civil Appeals in

the case, as reported in 222 S.W.2d 128, at page 134, said:

"Appellant is not concerned with the damages paid for the construction of other pipe lines on the Hunt lands. Appellant must take the situation as found on the date it condemned the right of way and became obligated to pay the resulting damage by reason of the additional burden placed on the Hunt lands at that time."

The Hunt case was affirmed by the Supreme Court. Judge Garwood, in writing for the court said [149 Tex. 33, 228 S.W.2d 155]:

"As stated in the elaborate opinion in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, the issue of depreciated market value, which is the ultimate one in such cases, is largely a matter of opinion evidence, and a very wide range of factors may be legitimately taken into consideration by qualified witnesses as the foundation for their opinions. It may well be, as argued, that if the opinions should be shown to be based exclusively upon considerations of remote, fanciful or otherwise incompetent character, they would have to be disregarded, but, all opinion being at best something of a speculation, it does not cease to have probative force when impropriety attaches only to some, rather than all, of its underlying reasons. The question of market value is thus peculiarly one for the fact finding body, subject to the control of the court in the manner indicated in the Carpenter case, as well as through the powers of the trial court and Court of Civil Appeals with respect to verdicts properly classed as excessive."

The privilege given by appellant to the landowners herein to take gas from their pipeline for irrigation is urged as a valuable right to be considered on their contention that the verdict of the jury and the judgment of the court was excessive, ex-

orbitant and unreasonable. We can see little benefit to be derived from such concession when the privilege could be terminated by thirty days written notice after one year from the date the right was accorded. The jury most likely took this limitation into consideration.

From the record in this case and the authorities above cited we feel we would be presumptuous to substitute our opinions of before and after values of land in Hansford County for that of the jury. They heard the evidence, observed the demeanor of the witnesses, and undoubtedly knew men in public life such as the banker, implement dealer, and the other men who testified. From such testimony they weighed the evidence and came up with figures more than that testified to by appellant's witness (which was that the landowners were not entitled to any damages for the easement) and less than that testified to by appellee's witnesses.

■ The rule is well settled that the judgment of a trial court will not be set aside if there is any evidence of a probative nature to support it and that a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings. Lynch v. McLendon, Tex.Civ.App., 283 S.W.2d 88.

In these years of wild inflation who can say better than a jury of the County where the land is located how much in dollars the parties were damaged by the 66-foot easement constituting an integral part of their system of transportation of natural gas from this state into other states across land the record shows is subject to irrigation, which easement has no limitation of time so long as it is used for the purposes condemned and which carries with it rights that unquestionably would materially handicap the operation of the land for agricultural purposes, and particularly so if irrigated.

Accordingly, appellant's first four assignments of error are overruled.

Under appellant's fifth and last assignment it contends the court below erred in refusing to admit in evidence as bearing upon market value that portion of the gas purchase agreements between appellant and United Producing Company, Inc., and Skelly Oil Company concerning any authority they had to grant appellant the right to construct pipe lines for conveying gas out of three sections of the land in question.

The record shows that after considerable argument between counsel the court sustained appellee's objection to the admission of the instrument having to do with the gas purchase agreement between appellant and United Producing Company, Inc. Counsel for appellant then asked the court for permission to read that portion of the instrument he wanted in evidence into the record for a bill. Appellee's counsel first objected for the reason that such procedure was just an effort to get something before the jury that had been excluded by the court. Counsel for appellant replied, "Well, do you want the jury excluded?" To this question appellee's counsel said, "Oh, go ahead and read it to them. Read it out loud." A fair interpretation of the record indicates it was then read in the presence of the jury as plaintiff's Exhibit 42 and the record shows the original of the instrument was then withdrawn.

It is not clear why, after that portion of the proffered testimony involving United Producing Company, Inc. was read in the presence of the jury at appellee's counsel's suggestion he then objected to the admission of a similar clause involving Skelly Oil Company and the court sustained the objection.

That part of the instrument read aloud in the presence of the jury was as follows:

"Seller grants to buyer, so far as the seller has the right so to do, right-of-way on the dedicated acreage for buyer's pipe lines and other equipment as may be necessary, with full right of ingress and egress to and from said premises, and the further right to do

thereon acts necessary or convenient for the carrying out of the terms of this agreement."

As may well be seen, this clause placed before the jury the fact that United Producing Company, Inc. had given appellant, so far as it had the right to do so, any right it had to construct pipe lines for producing the gas and taking it off each section. That was all they were seeking to get before the jury on the instrument offered.

Then counsel for appellant, in his argument to the jury, spoke at length on the right both United and Skelly had to lay pipe lines without paying anything except crop damage. If that part of the instrument just above quoted, and read aloud in the presence of the jury, followed by appellant's argument did not cure any error the court might have made on his rulings having to do with the proffered testimony, then appellee's admissions made by their counsel to the jury certainly cured it. Such admissions were as follows:

"Mind you, ladies and gentlemen, please, they are not condemning this land to take this gas out of these three or four sections out there. They did not have to condemn it to do that."

Under this state of the record we do not find it necessary to hold whether such instruments were admissible in evidence or not because we believe and so hold that the record shows a waiver of appellee's objections made in connection therewith.

This case was submitted to the jury in a manner heretofore approved. Sample v. Tennessee Gas Transmission Co., 151 Tex. 401, 251 S.W.2d 221; Texas Pipe Line Co. v. Hunt, Tex.Civ.App., 222 S.W.2d 128.

Finding no such errors as would justify us in sending the case back for another trial the judgment of the court below is affirmed.