Charles D. BRYANT, Appellant,

v.

TRINITY UNIVERSAL INSURANCE COMPANY et al., Appellees.

No. 16840.

Court of Civil Appeals of Texas.

Dallas.

Jan. 6, 1967.

Rehearing Denied Feb. 10, 1967.

---

William F. Billings, of Fanning, Billings, Harper, Pierce & Gilley, Dallas, for appellant.

R. B. Cousins, of Thompson, Coe, Cousins & Irons, Dallas, for appellees.

BATEMAN, Justice.

The appellant Charles D. Bryant sought by this suit to recover of the appellees, a group of insurance companies, his loss by fire of the contents of a building in which he conducted the Golden Pheasant Restaurant. The companies' principal defense (and the only one involved on this appeal) was that the appellant himself had burned the property or caused it to be burned. By counterclaim the appellees sought to recover of appellant a substantial sum they had paid to certain holders of liens on the insured property. The jury gave a negative answer to Special Issue No. 18, inquiring as to whether they found from a preponderance of the evidence that appellant intentionally set fire to and burned the property; but in answer to Special Issue No. 19 they found that he did cause the fire to be intentionally set and to burn the restaurant. The jury also found the loss to be in the sum of $51,700. The court rendered judgment on the verdict, that appellant take nothing and that appellees recover on their counterclaim. We affirm.

By his first point of error on appeal the appellant asserts that the trial court erred in submitting Special Issue No. 19, "as there was no evidence of probative value to support its submission." In passing upon this "no evidence" point we look only to that part of the record which is most favorable to appellees supporting the jury's finding and disregard entirely that which is opposed to it or contradictory in its nature. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S. W.2d 609, 23 A.L.R.2d 1114; Greenfeld v. San Jacinto Ins. Co., Tex.Civ.App., 319 S.W.2d 134, 139, no wr. hist.; Jones v. Commercial Union Assurance Co., Tex.Civ. App., 405 S.W.2d 207, no writ hist. A summary of the evidence considered by us follows:

Appellant admitted that at the time of the fire he owed personal and business debts of more than forty thousand dollars. He acquired the Golden Pheasant Restaurant about the middle of 1962, and immediately began to lose money in its operation until October 1963. The fire occurred in February 1964.

There was evidence that the front door was the only entrance to the building and the restaurant, and appellant testified that Margaret Hill (the cashier), Joe Gayton, Ed Smart and he were the only four people who had keys to that door. There was also evidence accounting for the keys held by Mrs. Hill, Gayton and Smart the night of the fire. When the firemen arrived the door was locked.

Morton K. Smith had testified at the prior arson trial of appellant and, Smith having died in the meantime, his testimony was reproduced and admitted on the trial of this civil suit. This testimony was to the effect that Smith, a former employee of appellant at another restaurant, tried to borrow money from appellant in December 1963, that appellant told him he hadn't made any money since he had been there and didn't have a thousand dollars; that the witness asked him why he didn't sell out and close up, to which appellant replied that he had tried to sell the place but the only offer he had was ten per cent of his investment, and that he couldn't take that

because he owed more than he would get out of it that way. Smith further testified that later that month he was with appellant who told him there was only one way for him to get out of the business, and that was by fire; that he was with appellant again within the first week of January 1964 when appellant told him that if he would come to the basement with him he would show him how he planned to start the fire; that they went to the basement, where the witness saw a food warmer hanging from a conduit six or seven feet above the floor; that appellant loosened the wire by which the food warmer was suspended and put it about three inches from some wood and asked Smith how long he thought it would take to catch fire, to which the witness replied that he didn't think it would ever catch fire; that they then went back upstairs, where the discussion continued as to the possibility of the fire and how it could be set, and appellant asked him if he knew of some other way that it could be. done, and when the witness replied "no" the appellant said, "Would you consider setting this fire if I would give you one thousand dollars?" The witness said he told appellant that he thought he was "nuts" and got up and walked out and never did go back.

Joe Gayton testified that he had worked for appellant as a cook approximately a year and a half; that in January 1964 appellant came in the kitchen and asked him what he thought about burning the place, to which the witness replied that it was his (appellant's) business and that he could do what he wanted to do with it; that a few days later appellant asked him what he thought about getting a professional to come "to do it" and that the witness told him that if he (appellant) was going to burn the place he should do it himself. He also testified that when he went to work early on the morning of Saturday, the day before the fire, he smelled something burning and went to the basement and found a food warmer which was smoking, and he unplugged it and smothered out the fire, then went back upstairs and called appellant on the telephone.

C. W. Parish testified that such a food warmer would start a fire under the right circumstances.

There was also testimony that when the firemen arrived the fire had been burning about three and a half to four hours, and Fire Chief Emerson testified as an expert that in his opinion the fire was of incendiary origin.

There was testimony that appellant, while under arrest, stated to D. G. Dabbs, an investigator of the Dallas Fire Department, and to Allen Sweatt, a deputy sheriff, that he (appellant) was responsible for the fire. Sweatt said appellant made that statement in his presence three different times.

This evidence, though wholly circumstantial, was in our opinion quite sufficient to warrant the submission of Special Issue No. 19 and to support the jury's answer thereto. The probative value of that evidence outweighs the dangers incident to allowing verdicts to stand which are based entirely on circumstantial evidence. In balancing these intangible considerations, we must necessarily rely heavily on the wisdom and discretion of the trial judge, and unless it appears to us that the trial court has abused its discretion in this respect, we feel that its decision should not be disturbed. McCormick & Ray, Texas Law of Evidence, Vol. 2, § 1481, pp. 330–1. See also Stein v. Girard Ins. Co. of Philadelphia, Pa., 7 Cir., 259 F.2d 764, where importance is ascribed to the circumstance that all keys to the burned establishment were accounted for in the evidence but that of the owner.

The first point of error is overruled.

By his second point of error appellant asserts that the trial court erred in permitting the testimony of Morton K. Smith in the prior arson trial to be read to the jury. The general rule involved is thus stated in Mc-

Cormick & Ray, Texas Law of Evidence, Vol. 1, § 941, pp. 719–20:

"The rule considered in this chapter is as follows: statements made in evidence upon a previous judicial proceeding máy be received upon a subsequent trial as evidence of the truth of such statements where the witness who gave the evidence upon the former hearing is now dead or unavailable, provided the party against whom the evidence is now offered (or someone else claiming under the same right or title) had the opportunity to cross-examine the witness at the former trial upon the same issue as that upon which the evidence is now offered."

So far as we can determine, our Texas courts have never passed on the question of whether, under the rule above stated, testimony given in a prior *criminal* case is admissible in a subsequent *civil* case involving substantially the same issues. The Supreme Courts of Illinois and Oklahoma, however, have written on it. In McInturff v. Ins. Co. of North America, 248 Ill. 92, 93 N.E. 369, it was held that such evidence was not admissible because the issue was not the same; that in a criminal case the issue was "guilt" and in a civil case the issue was "property". We find ourselves unable to adopt that reasoning, but agree, rather, with the reasoning of the more recent decision of the Supreme Court of Oklahoma in Travelers Fire Ins. Co. v. Wright, Okl.Sup.Ct., 1958, 322 P.2d 417, 70 A.L.R.2d 1170, holding that such evidence was admissible. That was a suit on fire insurance policies, and it was held that to define the issues as "guilt" and "property" would be to determine the ultimate issue or result sought to be obtained by the litigation, whereas the "issue" sought to be established by the witness was whether or not one of the plaintiffs had actually procured the burning of the building.

█ We hold that in this case the issue was substantially the same in both cases and that, since appellant was a party to both suits and had full opportunity to cross-

examine the witness in the criminal trial, there was no error in admitting the testimony. We consider this ruling to be in harmony with the rules laid down by our Supreme Court in Boyd v. St. Louis Southwestern Ry. Co. of Texas, 101 Tex. 411, 108 S.W. 813; Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681, 697; and Houston Fire & Casualty Ins. Co. v. Brittian, Tex.Sup., 1966, 402 S.W.2d 509. Appellant's second point of error is overruled.

Appellant's third point of error is fragmented into what are really five separate points of error, all complaining of rulings of the court with respect to the testimony of the witness Joe Gayton. This witness was employed by appellant at the time of the fire and had testified for the state in appellant's trial for arson. The five different contentions made by appellant under this third point of error are disposed of in the five following paragraphs, lettered to correspond with the five subdivisions of the third point in appellant's brief.

█ (a) The first contention is that the court erred in permitting Gayton to testify, over proper objections, after stating that his written statements failed to refresh his memory. This part of the point is faulty and not in compliance with Rule 418, Vernon's Texas Rules of Civil Procedure, in that the testimony complained of is not pointed out with any certainty. Old Colony Ins. Co. v. Messer, Tex.Civ.App., 328 S.W.2d 335, wr. ref. n. r. e.; Farris v. Moore, Tex.Civ.App., 293 S.W.2d 683, wr. ref. n. r. e. However, we have read all of the testimony of this witness and find therefrom that at first he insisted that he could not remember any of the details he was asked about. Even his signed statements, made shortly after the fire, failed to stimulate his memory. But when the witness was recalled following an overnight recess he was able to testify quite fully. However, appellant made no objection to his testifying to matters which he could not remember the previous day. Nor do we find that appellant requested that the tes-

timony be stricken or curtailed on this ground. The trial court has considerable discretion in the matter of the examination of witnesses, and we do not find that this discretion was abused. Foster v. Guerra, Tex.Civ.App., 219 S.W. 295, wr. dism. We see no merit in this contention.

■ (b) Appellant says the court erred in permitting counsel for appellees to lead the witness by asking specific questions quoted from statements previously made by the witness. We do not agree with appellant. This witness was quite obviously a very reluctant witness. He ignored two subpoenas and was finally brought to court under an attachment. When interrogated he repeatedly stated that he could not remember what had happened. In the absence of the jury he testified to two threatening telephone calls received by him and his wife during the trial. The court then granted permission for this witness to be asked leading questions. This was within the discretion of the court. Travelers Ins. Co. v. Hurst, Tex.Civ.App., 358 S.W.2d 883, wr. ref. n. r. e.

■ (c) When this witness was first called the court, outside the presence of the jury, instructed him specifically not to mention the deaths of any persons. This instruction was requested by appellant, who felt that he would be prejudiced if the jury were informed that four city firemen had lost their lives in fighting this fire. While the witness was being examined by appellees' counsel he was asked about a conversation he had had with appellant the morning after the fire. The witness stated that appellant "was just walking around like he was worried," and when appellant's objection thereto was sustained counsel for appellees said to the witness: "Don't say what he looked like or how he acted. As best you can remember, tell us what he said to you." The witness replied: "He said he was sorry about the four firemens." Appellant immediately objected and first moved that the jury be instructed to disregard the testimony and then, after the jury

was withdrawn, moved for a mistrial. The court instructed the jury not to consider the answer of the witness for any purpose whatsoever but overruled the motion for mistrial, which ruling is the basis of this complaint. We are of the opinion that the court did not abuse its discretion in overruling the motion for a mistrial. We think the court properly handled the matter. In any event, however, we do not consider the remark of the witness of such importance or its effect so harmful as to cause the rendition of an improper verdict or judgment. Rule 434, T.R.C.P.; Walker v. Texas Employers' Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298.

■ (d) Before the witness Gayton took the stand he was instructed at appellant's request not to mention any threatening phone calls he may have had during the trial. The witness obeyed this injunction, but while he was under direct examination appellees' counsel, being unable to obtain any information from the witness, or to ask the witness any question without having the witness reply that he did not remember, asked the court, in the presence of the jury, to permit him to "go into the matter of the telephone threats." This request was denied. Appellant did not move for a mistrial; he did not request the court to instruct the jury not to consider the statement; he did not even object to the statement. He cannot now be heard to say that the judgment should be reversed because the trial court did not on its own motion declare a mistrial and discharge the jury. Any right he may have had to complain of the statement was waived. Panos v. Jackson, Tex.Civ.App., 253 S.W.2d 705, wr. ref. n. r. e., and cases cited therein.

■ (e) While appellees' counsel was examining the witness Gayton, and the witness was having difficulty remembering any of the details he was asked about, counsel offered in evidence certain written statements which the witness said he had signed shortly after the fire. Objections thereto were made and the court said, "Well, I will

sustain the objection; I will allow you to prove it up in a different manner, Mr. Cousins. There is another way you can do it." No objection was made by appellant until the next day, after Gayton had recovered his memory and testified at considerable length. Appellant then moved the court to instruct the jury not to consider the court's remark, quoted above, on the ground that it left the jury with the impression that appellees' counsel had been unable to figure out the way to get the statements in evidence and that, therefore, the jury was being deprived by appellant's objections of a right to see evidence which might be material, and that the court's statement was a comment on the weight of the evidence. Complaint is now made that error was committed in overruling that motion. We are of the opinion that the trial court properly held that the objection came too late and that the right to object had been waived. Moreover, we do not think the remark constituted a comment by the court on the weight of the evidence, or that it probably prejudiced or harmed appellant at all.

Appellant's entire third point of error is therefore overruled.

By his fourth point of error appellant complains of the court's refusal to admit evidence of the judgment of acquittal in the prior arson trial, which he offered for the limited purpose of showing that such proceedings were terminated. We fail to see the materiality of such evidence, and if it was immaterial there was no error in excluding it. Moreover, we hold that any error there may have been in the exclusion of the evidence was harmless. Rule 434, T.R.C.P. The fourth point is overruled.

Under his fifth point of error appellant contends that the court erred in refusing to strike, or instruct the jury not to consider, the testimony of Joe Dabbs and Allen Sweatt concerning statements made to them by appellant to the effect that he was responsible for the fire. Appellant's

position, as we understand it, is that these statements by appellant were not admissible in evidence because they were made while he was under arrest. We see no merit in this point. Since no objection was made thereto at the time it was offered, the right to object to the testimony of Dabbs was waived. The objection to the testimony of Sweatt, and the contention made under this point, are obviously based on the erroneous impression that the rules protecting a defendant in a criminal case from his admissions against his interest, made while under arrest and absent the statutory warning that they might be used against him, apply in a civil suit. We hold that they do not, and that the admissions of appellant that he was responsible for the fire were admissible against him. Greenfeld v. San Jacinto Ins. Co., Tex.Civ.App., 319 S.W.2d 134, 139, no wr. hist.; Evans v. Ball, Tex.Civ.App., 6 S.W.2d 180, wr. dism.; Koons v. Rook, Tex. Com.App., 295 S.W. 592.

Appellant also argues under this point that his statements that he was responsible for the fire were mere expressions of opinion or a conclusion on his part, rather than a declaration of fact. However, the record does not reveal that this contention was ever made in the trial court. It will not be considered when raised for the first time on appeal. "A party must stand or fall on the objection as made in the trial court." Hooten v. Dunbar, Tex.Civ. App., 347 S.W.2d 775, 778, wr. ref. n. r. e.

Appellant's sixth point is that the trial court erred in admitting testimony of Ernest A. Emerson that in his opinion the fire was of incendiary origin.

Before expressing that opinion, the witness had identified himself as Chief Fire Investigator for the Dallas Fire Department with rank equivalent to Battalion Chief. He detailed his education, training and experience in the matter of investigation of fires for the purpose of determining the causes and origins thereof. He also testified that in addition to talking to appellant

he "routinely" talked to Chief Briscoe who was in charge of fighting the fire, as well as to a number of the men who were engaged in fighting the fire, also to Chief Briscoe's superior and the fire marshal and some of the assistant chiefs. He also said that the day after the fire was out he made an investigation of the premises himself. He related the physical facts he found there which, without detailing them here, were in our opinion amply sufficient in themselves to justify his opinion as to the incendiary origin of the fire. He stated that in addition to what he found in the room he did talk to a number of people about the fire, but that his opinion as to the physical aspects of the fire was not based on what other people had told him. When asked whether his opinion that the fire was of incendiary origin was based on what other people had told him as well as what he found in the room, he answered "No, sir." He was then asked whether that opinion was based solely on what he found in the room, to which he also answered "No, sir." Shortly thereafter he stated, "Basically and primarily and by and large my opinion was based on the physical aspects, but not entirely." He was then asked whether he based his opinion partly on what other people told him and what his investigators found and what other people told them, and he said, "Well, that had some bearing on it, yes. * * * naturally, it would have to." Appellant then moved to strike all

testimony with respect to the witness' opinion because based on hearsay, which motion was overruled.

The Texas authorities on this question are not easily reconcilable. Some of them indicate that if it be shown that *any* of the information upon which the expert witness bases his opinion comes to him by hearsay his opinion is without value and inadmissible unless the hearsay information is shown by undisputed evidence to be true.[1] Others announce the rule that the opinion is admissible unless based *wholly* on hearsay.[2]

We do not think that the triers of the facts may properly be deprived of the opinion of an expert witness simply because in the course of an extensive investigation he may have received a bit of information from some unnamed person, the truth of which was not shown. We are unwilling to hold that the testimony of an expert witness, whose opinion is based largely on facts actually known to him or proved to be true, is automatically rendered valueless and inadmissible merely because in the course of his investigation he heard someone make a casual hearsay statement which perhaps had some slight part in the formation of his opinion. We do not think the law requires us to do so. Such a holding, in our opinion, would thwart criminal investigations and deprive courts of valuable evidence.

1. 23 Tex.Jur.2d EVIDENCE, § 412, pp. 616, 618; Reed v. Barlow, Tex.Civ.App., 157 S.W.2d 933, 935, wr. ref.; National Security Life & Casualty Co. v. Benham, Tex.Civ.App., 233 S.W.2d 334, wr. ref. n. r. e.; Fidelity Union Casualty Co. v. Dapperman, Tex.Civ.App., 47 S.W.2d 408, 417, wr. dism.; Republic Underwriters v. Lewis, Tex.Civ.App., 106 S.W. 2d 1113, no wr. hist.

2. Norris v. Lancaster, Tex.Com.App., 280 S.W. 574; Gray v. Bird, Tex.Civ.App., 380 S.W.2d 908, 912, wr. ref. n. r. e.; Urquhart v. Barnes, Tex.Civ.App., 335 S.W.2d 666, no. wr. hist.; Texas Employers' Ins. Ass'n v. Rogers, Tex.Civ.App., 368 S.W.2d 21, wr. ref. n. r. e. Experts on property values may generally give their opinions though largely based on hearsay. 19 Tex.Jur., EXPERT AND OPINION EVIDENCE, § 290, p. 445; Fort Worth & R. G. Ry. Co. v. Thompson, Tex.Civ.App., 77 S.W.2d 289, no wr. hist.; Schooler v. State, Tex.Civ.App., 175 S.W. 2d 664, wr. ref. w. o. m.; Cole v. City of Dallas, Tex.Civ.App., 229 S.W.2d 192, wr. ref. n. r. e.; Kansas City Southern Ry. Co., v. Frederick, Tex.Civ.App., 276 S.W.2d 332, wr. ref. n. r. e.; City of Houston v. Huber, Tex.Civ.App., 311 S.W.2d 488, no wr. hist.; and Panhandle Eastern Pipe Line Co. v. Jackson, Tex. Civ.App., 306 S.W.2d 145, 148, no wr. hist.

"Strictly speaking," said the Supreme Court of Oklahoma in Owens v. Oklahoma Turnpike Authority, 283 P.2d 827, 833, "practically all expert testimony is based at least in part upon hearsay." An accident or arson investigator, if properly trained, must necessarily base his expert testimony on things that have been told him by his teachers. His ability to so utilize his training is what qualifies him as an expert.

It is our view that the admissibility of such expert testimony should be left to the sound discretion of the trial judge and that his decision should not be disturbed unless it be shown that he has abused that discretion. Urquhart v. Barnes, Tex.Civ. App., 335 S.W.2d 666, 669; Fulton Fire Ins. Co. v. First State Bank of Willis, Tex.Civ. App., 353 S.W.2d 937, wr. ref. n. r. e. We think the trial court has, or should have, the same discretion in this respect that it has in determining, before the expert witness is allowed to give his opinion, whether he is actually qualified as an expert witness, as was done in Bolstad v. Egleson, Tex.Civ. App., 326 S.W.2d 506, 519, wr. ref. n. r. e. See also Montgomery Ward & Co. v. Levy, Tex.Civ.App., 136 S.W.2d 663, 668, wr. dism., judg't correct. No abuse of discretion was shown in this case, and we therefore hold that there was no error in admitting this witness' expert opinion as to the origin of the fire.

If we be mistaken in so holding, however, we are nevertheless definitely of the opinion that no reversible error is shown. There was such a wealth of other evidence admitted on this point, as related above, that it cannot be said that the admission of Chief Emerson's opinion as to the incendiary origin of the fire was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Therefore, if there was error in the ruling, it was harmless. Rule 434, T.R.C.P.

The judgment appealed from is

Affirmed.