Charles D. **GARRETT**, d/b/a **Charlie's Drive-Through**, Appellant,

v.

**STANDARD FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT**, Appellee.

No. 7840.

Court of Civil Appeals of Texas, Beaumont.

July 29, 1976.

Rehearing Denied Aug. 19, 1976.

**636**

James W. Mehaffy, Jr., Beaumont, for appellant.

Dale Dowell, Beaumont, Osborne J. Dykes, III, Houston, for appellee.

KEITH, Justice.

Plaintiff below appeals from an adverse judgment rendered in his suit to recover on a policy of fire insurance. The defendant insurer interposed several policy defenses including arson and the jury verdict was adverse to the contentions of the plaintiff. The judgment followed the verdict, and this appeal has been perfected from the order overruling plaintiff's amended motion for new trial.

Garrett had been operating Charlie's Drive-Through cafe or restaurant in West Orange for some time before it was destroyed by fire during the early morning hours of February 28, 1973. We will have occasion to summarize the evidence in connection with a discussion of plaintiff's first two points of error. At this time, we summarize the jury findings in the margin.[1]

Points one and two,[2] reproduced in the margin, complain of the admission of certain testimony from defendant's witness, Troy Standley, an arson investigator. Standley qualified as an expert witness on the subject of fires of incendiary origin, having had more than ten years' experience in this specialized field. He testified that he made an exhaustive investigation a few weeks after the fire and determined that the fire was of incendiary origin. He fixed the point of origin of the fire to be under a sink against the back wall of the restaurant building; he eliminated as possible sources of the fire the normal hazards, including electrical fuseboxes, wiring, the hot water heater, compressors and condensers, etc.

It was shown by other testimony that plaintiff drastically increased the insurance coverage on the building about a month before the fire. Insurance agent Boehme wrote the coverage from the time plaintiff acquired the building in 1970 until December of 1972. In 1971, plaintiff insured the

---

1. The jury found: (1) plaintiff "set fire, or caused fire to be set" to the insured premises on the occasion in question; (2) the hazard of fire was increased on the occasion in question by means within the knowledge and control of the plaintiff; (3) plaintiff misrepresented or concealed from the writing agent of the insurer the true status of the mortgages upon the insured premises; (4) such misrepresentation or concealment was willful; (5) the "mortgage status" of the restaurant building was material; (5–A) that the writing agent of the insurer actually relied on the misrepresentation or concealment in issuing the policy in question. The jury answered "we do not" to Special Issue No. 6 inquiring if plaintiff furnished the proper proof of loss to the defendant in accordance with the policy provisions. Under our view of the record, the remaining findings are immaterial and need not be further mentioned.

2. Point of Error No. 1: "The Trial Court erred in admitting the testimony of the witness Standley concluding that the fire was incendiary in origin and that Garrett was responsible for it, because such testimony was conjectural and speculative, based on hearsay, because the same invades the province of the jury, and because a sufficient predicate was not laid for the expression of this opinion."

Point of Error No. 2: "The Trial Court erred in admitting testimony concerning Garrett's financial affairs, because the same was immaterial, irrelevant, and prejudicial."

building for $2,500, with $6,600 on the contents; in 1972, the coverages were increased to $7,500 and $10,000, respectively, but all of the coverage (except one policy for $2,500 on the building) lapsed on December 8, 1972. On January 8, 1973, after the building had been almost completely uninsured for a month, plaintiff sought out another insurance agent, Thomas Sorrels, to write the insurance. This time he sought coverage: on the building, $25,000; on the contents, $15,000; and for earnings (which he had never carried before), $8,000. He told Sorrels that there was no mortgage upon the building and the policy was issued with no mortgagee shown as a loss payee. In truth and in fact, the building had substantial first and second mortgages.

Further, it was shown that plaintiff was under severe financial strain. He showed a business loss of $4,461 during the calendar year 1972 upon his income tax return, although his bookkeeper's records showed the loss to be $2,829. According to these private records, the total profit for the fourteen months preceding the fire was less than $200.

Plaintiff had been in ill health before the fire; he had trouble keeping a good manager; three of his suppliers had sued him on unpaid bills; both the state and federal governments had filed tax liens against his property; he was two months delinquent in his mortgage payments on a Beaumont operation and the holder of the mortgage was exerting pressure to make the payments current; he was almost two months delinquent upon his first mortgage payments on the premises which burned; he was behind on the second lien payments in excess of $5,000.

The fire occurred early on a Tuesday morning, February 28, 1973. Plaintiff had closed the place without any definite plans for reopening on the preceding Sunday night, February 26, when he laid off the last two employees and removed the cash register and the soft drink machine.

Standley testified to his investigation and, in doing so, admitted that he had talked with firefighters who were present while the building was burning, one or more of plaintiff's former employees, the plaintiff himself, and others. Upon cross-examination, he was forced to admit that, at least in part, his opinion that appellant had started the fire was based upon hearsay. Plaintiff now contends that he is entitled to a reversal because of such admission by Standley. We disagree and overrule the first two points.

The leading case in this state is *Bryant v. Trinity Universal Insurance Company*, 411 S.W.2d 945, 951–953 (Tex.Civ. App.—Dallas 1967, writ ref'd n. r. e.), where the authorities are discussed in detail. We adopt as ours this language from the opinion:

"We are unwilling to hold that the testimony of an expert witness, whose opinion is based largely on facts actually known to him or proved to be true, is automatically rendered valueless and inadmissible merely because in the course of his investigation he heard someone make a casual hearsay statement which perhaps had some slight part in the formation of his opinion." (411 S.W.2d at 952)

\* \* \* \* \* \*

"It is our view that the admissibility of such expert testimony should be left to the sound discretion of the trial judge and that his decision should not be disturbed unless it be shown that he has abused that discretion. . . . No abuse of discretion was shown in this case, and we therefore hold that there was no error in admitting this witness' expert opinion as to the origin of the fire." (Id. at 953)

The Supreme Court, discussing the foundation of the opinion testimony of an expert witness in *Lewis v. Southmore Savings Association*, 480 S.W.2d 180, 186–187 (Tex. 1972), cited *Bryant* twice. The rule laid down in *Bryant* has received wide acceptance; see, e. g., *Cisneros v. New Hampshire Insurance Company*, 475 S.W.2d 351, 355 (Tex.Civ.App.—Corpus Christi 1971, no writ); *Bell Aerospace Corporation v. Anderson*, 478 S.W.2d 191, 198 (Tex.Civ.App.— El Paso 1972, writ ref'd n. r. e.).

See also, *Payne v. Hartford Fire Insurance Company,* 409 S.W.2d 591, 600 (Tex. Civ.App.—Beaumont 1966, writ ref'd n. r. e.);[3] Annotation, "Cause of Fire—Opinion Evidence," 88 A.L.R.2d 230 (1963).

█ There was no direct eyewitness testimony supporting the jury findings that the appellant caused the fire to start in his building for the purpose of collecting the proceeds of the insurance policy now in suit. However, the careful trial court instructed the jury upon the law of circumstantial evidence and the charge comes to us without objection. It has long been the law in this state that arson may be established by circumstantial evidence. See *Joy v. Liverpool, London & Globe Ins. Co.,* 32 Tex.Civ. App. 433, 74 S.W. 822, 825 (San Antonio 1903, writ ref'd), wherein the court held:

> "In the proof of an issue of such a character as arson, involving, as it does, such moral turpitude and criminal intent, every circumstance tending to prove the guilt of the party charged with the commission of the offense is admissible in evidence."

The crime of arson, being in defiance of law, is ordinarily conceived in secrecy and executed in such a manner as to avoid detection and exposure; and proof of such an unlawful enterprise must, in the very nature of things, be made by circumstances, and every circumstance which tends to cast light upon the incident is legitimate and proper. Cf. *San Antonio Gas Co. v. State,* 22 Tex.Civ.App. 118, 54 S.W. 289, 292 (San Antonio 1899, writ ref'd). Having reviewed the record carefully, we are of the opinion that the trial court did not abuse its discretion in permitting the testimony to go to the jury.

In any event, as was done in several of the cited cases following *Bryant,* supra, if we be mistaken in so holding, we are, nevertheless, definitely of the opinion that no reversible error is shown. There was a wealth of other evidence admitted and it cannot be said that the admission of this bit of evidence was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. If there be error in the admission of the opinion evidence, such error was harmless.

█ Before entering into a discussion of plaintiff's third, fourth, and fifth points of error, we must dispose of a troublesome threshold question. The cause having been heard by a jury, plaintiff was required to file a motion for new trial to preserve any complaints as to the admission of evidence or relating to the factual sufficiency of the evidence to support the answers of the jury to the several special issues. Tex.R.Civ.P. 324; *Wagner v. Foster,* 161 Tex. 333, 341 S.W.2d 887, 889 (1960); *Airway Ins. Co. v. Hank's Flite Center, Inc.,* 534 S.W.2d 878 (Tex.1976).

Plaintiff's points three, four, and five are substantially alike, each challenging one or more findings of the jury to the special issues submitted. Point four is typical and is set out in the margin.[4]

█ Having examined the assignments of error set forth in the amended motion for new trial, we note that they are grouped into units of three but each complains of the error of the court in *submitting* the issue because (a) "there was no evidence to support submission thereof, and the jury's answer thereto"; (b) "there was not sufficient evidence to support submission thereof, and the jury's answer there-

---

**3.** The rule enunciated in *Bryant* and *Payne,* supra, has now been introduced into the criminal law of this state. See *Burrow v. State,* 481 S.W.2d 895, 898 (Tex.Cr.App.1972).

**4.** *Point 4*: "The Trial Court erred in entering judgment for the defendant, because there was no evidence, or insufficient evidence, to support the jury's answers to Special Issues Nos. 3, 4, 5, and 5A. In the alternative, the jury's answers to said special issues were against the great weight and preponderance of the evi-

dence. (Germane to Assignments of Error XIV through XXV)."

The assignments of error complain that the evidence did not support the *submission* of the several issues. The *assignments* upon which the points are based mention *"submission"* rather than the findings of the jury. Thus, the points are, essentially, "no evidence" points. *Meadows v. Green,* 524 S.W.2d 509, 510 (Tex. 1975).

to"; and (c) "because the jury's answer thereto was against the great weight and preponderance of the evidence."

We consider points three, four, and five multifarious and too general to comply with the requirements of Tex.R.Civ.P. 418. The subject was treated in detail by Justice Bissett in *Barber v. Corpus Christi Bank & Trust*, 506 S.W.2d 254, 257–258 (Tex.Civ.App.—Corpus Christi 1974, no writ), and we adopt his treatment of the subject. See also, *Ives v. Watson*, 521 S.W.2d 930, 933 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.).

■ However, if the points of error were to be considered as not being multifarious, a careful examination of each of the complaints—reviewed according to the applicable standard—fails to reveal reversible error.

Finding no error, the judgment of the trial court is affirmed.

AFFIRMED.

STEPHENSON, J., not participating.