Antonio CISNEROS, Jr., d/b/a Mr. Q
Systems, Appellant,

v.

NEW HAMPSHIRE INSURANCE COM-
PANY et al., Appellees.

No. 669.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 30, 1971.

Bonner & Ball, Nile E. Ball, Harlingen, for appellant.

Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, Asa V. Bland, McAllen, for NH Ins.

Adams, Graham, Lewis, Jenkins & Briscoe, Marshall Graham, Harlingen, for Pan Am.

## OPINION

BISSETT, Justice.

This is a suit on two insurance policies to recover for storm damage to a building and its contents. At all times pertinent hereto, Antonio Cisneros, Jr., appellant, had in force and effect a policy of fire and extended coverage insurance with New Hampshire Insurance Company covering a building owned by him in Brownsville, Texas, and a policy of fire and extended coverage with Pan American Thrift Insurance Company covering the contents of the building. On the night of May 12, 1969, the Brownsville area was struck by a rainstorm, accompanied by hail and high winds. Appellant's building and the contents therein were damaged as a result of the collapse of a portion of the roof of the building that caused water to pour inside and soak some of the contents therein. Appellant placed his damages at $11,050.49 to his building and $3,157.85 to the contents thereof. He alleged that such damages were caused by the wind that accompanied the rain.

Appellant filed suit to recover the damages alleged to have been sustained as a result of the storm. Trial was to a jury. Based on jury findings that were favorable to the defendants-appellees, a take-nothing judgment was entered against plaintiff-appellant. Appeal has been timely perfected to this Court. We affirm.

In addition to general denials, the appellees specifically plead that the damages allegedly sustained by appellant were caused by an excluded risk, that is, an accumulation of water upon the roof, and therefore not covered by the insurance policies then owned by appellant. The following statement appears in appellant's brief: "Insured's cause of action hinged on the single issue of whether wind or accumulation of water on roof caused its collapse".

The case was submitted to the jury on seven special issues, the last six of which were to be answered only in the event that they answered special issue no. 1, "It was". The issue reads as follows:

"Do you find from a preponderance of the evidence that wind was the dominant efficient cause of the collapse of the Mr. Q warehouse roof on the occasion in question?"

The jury answered "It was not". No objection was made to the charge of the court or to any issue contained therein.

██ We shall first consider appellant's second and third points of error, the same being "no evidence" points. With respect to "no evidence" points, we are required to consider only the evidence and inferences favorable to the jury findings and to disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965). We are without authority to disregard the jury findings in response to special issues submitted when there is some evidence in the record to support them. Singer v. Singer, 150 Tex. 115, 237 S.W.2d 600 (1951).

██ Appellees, by their pleadings, plead specific exclusions under the existing contracts of insurance and thus raise the issue of contract coverage. It, therefore, became appellant's burden to present evidence of probative value and to secure a fact finding by the jury that the dominant efficient cause of the loss was the wind that accompanied the rain. Hardware Dealers Mutual Insurance Co. v. Berglund, 393 S.W.2d 309 (Tex.Sup.1965); Wheelook v. American Fire and Casualty Co., 414 S.W. 2d 61 (Tex.Civ.App.—Austin 1967, writ ref'd n. r. e.).

In discussing fire, windstorm and extended coverage in the standard policy of insurance, the Court, in Fidelity Southern Fire Insurance Company v. T. B. Crow, 390 S.W.2d 788, 793 (Tex.Civ.App.—Waco 1965, writ ref'd n. r. e.), said:

" . . . It is our view that our Texas courts have consistently ruled that, under the basic policy, plaintiff has the burden of proving that the loss fell within the coverage of the policy and not within the provisions of the exclusions of the policy whenever the affirmative defense of the exclusion is asserted. . . ."

That rule applies to the instant case.

The storm deposited some five inches of rain on the area within a short period of time, as revealed by the weather records that were introduced in evidence. The highest wind velocity was 78 miles per hour registered in a gust at approximately 8:43 p. m. Thereafter, the highest wind was 45 miles per hour at about 1:38 a. m. on May 13, 1969. The collapsed roof was first discovered by the witness Herbert Stresser, who worked at the used car lot next door. Mr. Stresser testified that he went down to his place of business at approximately 11:00 p. m. on May 12, 1969, and remained there until about 1:30 a. m. the next morning; his office consisted of a wood frame building sitting on a concrete foundation; he sustained no damage to his building nor to his light poles and signs. He also stated that there was no damage to any other of the structures in the neighborhood. Mr. Stresser also testified that during the time that he was on his premises (from 11:00 p. m. to 1:30 a. m.), he saw nothing unusual and heard nothing unusual with respect to appellant's building; however, the next morning when he came to work he noticed water running out of the front door of appellant's building and when he looked inside he saw that the roof had collapsed.

██ The evidence presented by appellant did nothing more than create a fact question as to whether the wind or the accumulation of water on the roof caused the collapse of the roof and the ensuing damage. The jury was free to believe or disbelieve all or any portion of the evidence presented by appellant. That the appellant failed to meet his burden is reflected by the finding of the jury above stated. We have reviewed the entire record in the light most favorable in support of the jury's answer to special issue no. 1. The answer is fully supported by the evidence. In our opinion, the trial court properly entered judgment for appellees on the jury verdict for the reason that appellant, as plaintiff in the trial court, did not sustain his burden of proof on the action brought by him. Appellant's second and third points are overruled.

██ Appellant, by his first point of error, asserts that the trial court erred in not

sustaining appellant's motion to exclude the testimony of B. J. Osborne as being based on hearsay. This point cannot be sustained. The witness, B. J. Osborne, a structural engineer whose qualifications as an expert in the field are not challenged, was called by appellees. He first inspected the subject building on December 3, 1969, following the collapse of the roof in May, 1969. He testified that an excessive load of water on the roof caused the collapse. On cross-examination, when asked the reason for his conclusion that the accumulation of water on the roof caused its collapse, he answered:

"I had the testimony—I don't know whether 'testimony' is the correct word but Mr. Tucker described the circle, the staining. We've got a picture here somewhere".

Mr. Tucker was the claim adjuster for appellees, who did not testify at the trial. The picture referred to by Osborne was introduced in evidence by appellant. Other statements made by Osborne were:

"When I was on the scene Mr. Tucker had described the condition that is depicted by this photograph, . . . that being a circle, more or less, on the roof surface, which I have depicted here.

\* \* \* \* \* \*

"As I say, Mr. Tucker recounted and described this to me.

\* \* \* \* \* \*

"I accept the testimony that Mr. Tucker gave because, in my estimation, with the stresses that were in these trusses, they had to be deflected."

Appellant did not object to Osborne's testimony when it was first offered because it was his understanding that appellees would call Tucker the next day "to lay the proper predicate for Osborne's testimony". After both sides had rested without appellees calling Tucker, appellant made his motion that Osborne's testimony be stricken, which the trial court overruled. Appellant contends that it was prejudicial error in overruling his motion to strike. He says that to give Osborne's testimony any probative value would be analogous to giving probative value to the opinion of an expert when the same is predicated, in whole or in part, upon the unsworn statement of an interested party who may be tempted to magnify the basis of grounds upon which the validity of the opinion depends.

We recognize the general rule (relied on by appellant) that hearsay evidence is actually no evidence at all, has no probative value, and even when admitted without objection will not support a judgment. However, in this case, there is a great deal more evidence in the record than what Mr. Tucker may have told Mr. Osborne. In addition to references to his conversation with Mr. Tucker, Mr. Osborne described all of the structures in the neighborhood which were in the vicinity of the building; these structures are shown on a plat that was introduced in evidence. They range from large rooming houses across the street to a small drive-in restaurant next door to a shed at the rear of appellant's building. These buildings were not damaged. Appellant's building had eight-inch walls. Mr. Osborne testified that the walls in the building and its general construction would have required a wind velocity of 160 miles per hour to move the walls of the building. He further testified as to the various physical changes that would have occurred had the roof in question been damaged by wind as opposed to water. According to his testimony, if the wind had been the dominant factor as opposed to an accumulation of water, (a) there would have been a lifting of the roof covering, with the felt and gravel being blown off the roof; (b) there could have been a tearing or ripping of the roof and the nails and wood covering would have pulled out over a large area thereof; and (c) there would have been definite and definable horizontal and vertical cracks in the walls of the building, as they would have been bowed inward and outward. None of these things occurred.

Furthermore, Mr. Osborne's expert opinion testimony was based on the fact that the major roof truss, which was at the front of the building and did not fall, caused a deflection that caused the roof to retain water in the area in which it collapsed. He said that the center truss was also deflected. He further testified that the roof had a dead load of thirteen pounds and that in five inches of water on the roof it had an additional twenty-six pounds of live load and that the roof was not constructed to sustain that type of load. In addition, Mr. Osborne's opinion was based upon his examination of a photograph of the damaged condition of the roof that was taken shortly after its collapse. He stated that the photograph showed ponding of the water on the roof and he pointed out to the jury the area of the ponding. In response to the question of whether he was basing his conclusions on what Mr. Tucker told him, Mr. Osborne answered:

"No sir. I'm not saying that at all. I'm trying to find the picture. There it is.

When I was on the scene Mr. Tucker had described the condition that is depicted by this photograph, . . . that being a circle, more or less, on the roof surface, which I have depicted here. . . ."

In summary, Osborne stated that in his opinion excessive vertical load from the accumulation of water on the roof, not the force of the wind, caused the roof to collapse. We conclude and so hold that what Mr. Tucker told Mr. Osborne was verified and exemplified by other valid evidence of probative value before the jury. Mr. Osborne's expert opinion was also based upon what he physically observed and calculated, not solely on what he was told by Mr. Tucker.

In Bryant v. Trinity Universal Insurance Company, 411 S.W.2d 945, 952, 953 (Tex. Civ.App.—Dallas 1967, writ ref'd n. r. e.), the court said:

"We do not think that the triers of the facts may properly be deprived of the opinion of an expert witness simply because in the course of an extensive investigation he may have received a bit of information from some unnamed person, the truth of which was not shown. We are unwilling to hold that the testimony of an expert witness, whose opinion is based largely on facts actually known to him or proved to be true, is automatically rendered valueless and inadmissible merely because in the course of his investigation he heard someone make a casual hearsay statement which perhaps had some slight part in the formation of his opinion . . .

\*  \*  \*  \*  \*  \*

"It is our view that the admissibility of such expert testimony should be left to the sound discretion of the trial judge and that his decision should not be disturbed unless it be shown that he has abused that discretion. . . ."

See also Pan American Fire & Casualty Company v. Reed, 436 S.W.2d 561 (Tex. Civ.App.—Amarillo 1969, writ ref'd n. r. e.); Commercial Standard Ins. Co. v. Cisco Ind. School District, 435 S.W.2d 565 (Tex. Civ.App.—Eastland 1968, writ ref. n. r. e.); Bolstad v. Egleson, 326 S.W.2d 506, 519 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.); Urquhart v. Barnes, 335 S.W.2d 666, 669 (Tex.Civ.App.—Ft. Worth 1960, n. w. h.).

We, therefore, hold that the trial court did not abuse its discretion in overruling appellant's motion to strike the testimony of the witness Osborne. Such ruling by the trial court was not prejudicial to appellant. However, if we be mistaken in so holding, we are, nevertheless, of the opinion that no reversible error is shown. There is such an abundance of other competent and valid evidence admitted with respect to appellant's first point, as herein related, that it cannot be said that Osborne's entire testimony is so tainted with hearsay that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. The trial

court entered a correct judgment. Therefore, if there was any error in the ruling of the trial court with respect to appellant's motion to strike the testimony of Osborne, it was harmless. Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.