**Jan Iden EVRY and Arthur Evry, Appellants,**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION CASUALTY INSURANCE COMPANY, Appellee.**

No. 11-97-00038-CV.

Court of Appeals of Texas, Eastland.

Nov. 12, 1998.

Rehearing Overruled Dec. 10, 1998.

H. Thomas Hirsch, Hirsch & Stroder, Odessa, for appellants.

John K. Vaughan, Russell W. Schell, Christopher P. Hansen, Elizabeth A. Florence, Shell, Beene, Vaughan & Quillin, Dallas, Timothy Yates, Big Spring, for appellee.

Before ARNOT, C.J., and DICKENSON, J., and WRIGHT, J.

## OPINION

DICKENSON, Justice.

United Services Automobile Association Casualty Insurance Company (USAA) filed a declaratory judgment suit against its insureds, Jan Iden Evry and Arthur Evry, claiming that USAA did not have any liability to indemnify them for the fire loss of Jan's house and for the fire loss of the contents which were owned by Jan and her present husband. The Evrys filed a counterclaim for the sums which they claimed were due under their policy of insurance ($677,000 coverage on the house and $700,000 coverage on the contents) and also for damages for "breach of the duty of good faith and fair dealing" and for alleged violations of the Deceptive Trade Practices Act [1] and TEX. INS. CODE ANN. art. 21.21 (Vernon 1981 and Supp.1998). After all parties had rested, the trial court directed a verdict that USAA did not breach the duty of good faith and fair dealing and that it did not violate either statute. The other issues were submitted to the jury; the jury found that the fires on June 26 and June 27, 1994, "were intentionally caused by Jan Iden Evry or Arthur Evry or by someone acting on their behalf or with their knowledge." The trial court then rendered judgment that USAA owed no duty to defendants and that the Evrys take nothing by their counterclaims. The Evrys appeal.[2] We affirm.

*Points of Error*

Appellants argue, in five points of error, that the trial court erred: (Point One) in refusing to allow the jury to view "Defendants' Exhibit 64" (a videotape) during the jury's deliberations; (Point Two) in failing to grant a motion for new trial because documents "which had not been offered or admitted into evidence were exhibited and considered by the jury during its deliberations"; (Point Three) in refusing to grant a motion for new trial because the evidence was "legally insufficient" to support the jury's answer to Question No. 1; (Point Four) in refusing to grant a motion for new trial because the evidence is "factually insufficient" to support the jury's answer to Question No. 1; and (Point Five) in granting the motion for directed verdict on their "extra-contractual" causes of action.

*The Videotape*

■ Appellants argue in their first point of error that the trial court erred in refusing to allow the jury to view Defendants' Exhibit 64, a videotape, "during jury deliberation." Appellants claim that this videotape "had been previously admitted into evidence and shown the jury during trial." The record shows that the videotape was never admitted into evidence but that it was shown to the jury as demonstrative evidence while the expert who made the tape testified. Relevant portions of the reporter's record show the following questions, answers, objections, and rulings during the cross examination of one of the expert witnesses for USAA:

Q: All right. There is a videotape, and you're the one who took it?

A: That's correct.

[EVRYS' COUNSEL]: All right. At this time, Your Honor, we'd like to offer the videotape.

* * *

[ADVERSE COUNSEL]: I have no objection to the videotape, but I do object to

---

1. The Deceptive Trade Practices–Consumer Protection Act is found at TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Vernon 1987 & Supp. 1998).

2. There were other parties in the trial court, but the Evrys and USAA are the only parties to this appeal.

the sound being on it. There are voices out there unidentified. We don't know who they are. The sound is improper. There has not been a predicate laid as far as statements off camera [which were not made by the witness who was testifying].

\* \* \*

THE COURT: Well, I'm going to let you play the video without the audio. If you then want to introduce the video so the appellate court can listen to the audio, you may do so [by] bill of exception.

The record then shows that the videotape was played in the presence of the jury while the witness answered questions about what was shown on the videotape.

While it was deliberating, the jury asked to see the videotape which was taken after the fire. There were actually two videotapes. One was taken after the second fire, and it was introduced into evidence. That videotape was furnished to the jury during its deliberations. The other videotape was taken after the first fire (but before the second fire), and that is the tape which is at issue in this appeal. The reporter's record shows the following statements by the presiding juror, by counsel, and by the trial judge:

THE PRESIDING JUROR: Your Honor, I don't believe this [the tape which was admitted into evidence] is the video we thought it was.

THE COURT: This is the only video that is in evidence. ○

\* \* \*

[EVRYS' COUNSEL]: Your Honor, I marked that other video and I showed it to the jury.

THE COURT: Well, I know, but it's just like a chart. You know, you can do all kinds of things [to a chart] in front of the jury, but if it's not admitted, it's not in evidence.

■ Since the videotape was never admitted into evidence, the trial court did not violate TEX.R.CIV.P. 281. See and compare *First Employees Insurance Company v.*

*Skinner,* 646 S.W.2d 170, 172 (Tex.1983), where the Supreme Court held:

We conclude that Rule 281 is mandatory and that the trial court is required to send *all exhibits admitted into evidence* to the jury room during the deliberations of the jury. (Emphasis added)

We also note that in *Skinner* the Supreme Court found that the error in not sending the exhibit to the jury room was harmless under the old "harmless error" rule. TEX. R.CIV.P. 434 (repealed). If there was any error in the trial court's ruling on the videotape discussed in this point of error, it would have been harmless under TEX.R.APP.P. 44.1(a). The witness described the scene which was shown by the videotape, and the videotape was cumulative of evidence which the jury was permitted to consider. The first point of error is overruled.

*Documents Considered by the Jury*

■ Appellants argue in their second point of error that the trial court erred by failing to grant their motion for new trial on the ground that:

Documents which had not been offered or admitted into evidence were exhibited and considered by the jury during its deliberations.

The reporter's record shows that, during direct examination by her own attorney, Jan identified "Defendants' Exhibit 244" as copies of bills from Neiman–Marcus in Dallas for "a lot of clothes" that her second husband bought for her. The reporter's record shows 85 pages which were statements from Neiman–Marcus addressed to either Jan B. Iden or Mrs. J. Gordon Bristow (her names during her two prior marriages) for articles which she bought in 1983, 1984, 1985, and 1986. These statements were held together with a large paper clip; under them and attached to them by the large paper clip, there are other pages relating to a theft claim filed by Jan with Aetna Life & Casualty on November 3, 1988.

The presiding juror testified at the hearing on appellants' motion for new trial, and he said that the "Aetna theft report" was attached to Defendants' Exhibit 244 when he first saw it. On cross-examination by the

attorney for USAA, the presiding juror also said:

Q: To the best of your knowledge and belief, did you or any of the other members of the jury consider anything other than the evidence and the—both oral and documentary evidence that had been admitted at the trial in reaching the verdict?

A: Well, I don't know exactly how to answer that question, but if I can—be honest, *we looked at everything that was given to us by the Court, which included this whole packet* [the bills from Neiman–Marcus and the Aetna theft report]. (Emphasis added)

There is no proof that anyone tampered with the exhibits, and the only logical explanation is that the "Aetna theft report" was attached to the "Neiman–Marcus" bills when that exhibit was admitted into evidence. There was testimony that the witness did not take time to carefully review the entire document when she identified it for her lawyer. Appellants cite cases which hold that it is jury misconduct if there is "outside influence" which affects the jury's deliberations. Those cases are not in point because there is no proof of any outside influence. The trial court resolved this dispute when it heard testimony at the hearing on appellants' motion for new trial, and the trial court's ruling is supported by testimony from the presiding juror, the official court reporter, and the court bailiff. The second point of error is overruled.

### Sufficiency of the Evidence

We have reviewed the "no evidence" or "legally insufficient" claims under the well-known rule which is stated in, e.g., *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263, 265 (Tex.1974):

When a party asserts that there is no evidence to support jury findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings.

We have reviewed the "factually insufficient" or "against the great weight of the evidence" claims under the equally well-known rule

which is stated by, e.g., *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951):

[Factual sufficiency questions require the court of appeals] to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust.

After reviewing the evidence, both that supporting and that opposing the jury's verdict, we hold that the evidence is both legally and factually sufficient to support the jury's affirmative answer to Jury Question No. 1, which reads in full as shown:

Do you find from a preponderance of the evidence that the fires which occurred at 5000 South Birdwell, Big Spring, Texas, on or about June 26 and June 27, 1994, were intentionally caused by Jan Iden Evry or Arthur Evry or by someone acting on their behalf or with their knowledge?

In connection with this issue, the jury was instructed that a "fact" may be established by direct evidence or by circumstantial evidence or by both. The jury was also instructed that a fact is established by circumstantial evidence "when it may be fairly and reasonably inferred from other facts proved."

■ The record contains extensive testimony indicating that both of the fires were intentionally caused. There was evidence about the presence of accelerants and burn patterns. The first fire was put out, and fire department personnel went back to the scene after the first fire was extinguished to make sure that there were no "hot spots" which could reignite. The house was completely destroyed by the second fire. While it is true that appellants were in California at the time of the two fires, there was circumstantial evidence indicating that they had arranged for someone to set the fires.

When the firefighters arrived to put out the first fire, the gate to the property was locked. The firefighters had to cut the bolt on the gate in order to gain access to the property. The house was also locked, and the firefighters had to break into the house

in order to fight the fire. The record also shows that only three people had keys to the house. There was testimony that appellants locked the house and set the alarm system before they left the house for their trip to California. Since the alarm did not go off, the jury could infer that whoever set the fire had a key to the house and knew how to turn off the alarm system. This circumstantial evidence supports the jury's finding because it shows that the fires were not caused by vandals or burglars.

The evidence also contains testimony by people who saw the inside of the house between the two fires; these witnesses included Jan's son, Brandon Ellis Iden, and his wife, plus Jan's second husband, Jerry Iden, and his wife; they testified that some of the valuable furniture and clothing which had been in the house had been removed before the first fire was set. There was also testimony that the house had been listed for sale at a price of $495,000 (substantially below its insured value of $677,000) and that the price had been reduced to $350,000. Even though the house had been on the market for several months, the realtor had not been able to find any prospective purchasers. During this same period of time, appellants had increased the insurance coverage on the house and its contents. They raised the coverage on the house from $593,000 to $677,000. They raised the coverage on the contents from $355,980 to $406,200 and then to $700,-000. They also added a "replacement cost" endorsement on the contents. There is also evidence that appellants were having financial problems. At the time of the fires, they had an outstanding credit card balance due of $44,634; Jan owed back taxes on the property; and Arthur had a $600,000 fraud judgment entered against him. There was also testimony that the value of the furniture listed on appellants' claim was "grossly overstated."

The jury had the power and the responsibility to resolve the conflicts in the evidence; the jury was free to believe all, part, or none of the evidence given by each of the witnesses. The jury was the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given to their testimony. See, e.g., *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951). It has long been the law in this State that arson may be established by circumstantial evidence. See, e.g., *Garrett v. Standard Fire Insurance Company of Hartford, Connecticut*, 541 S.W.2d 635, 638 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.), where the court said:

> The crime of arson, being in defiance of law, is ordinarily conceived in secrecy and executed in such a manner as to avoid detection and exposure; and proof of such an unlawful enterprise must, in the very nature of things, be made by circumstances, and every circumstance which tends to cast light upon the incident is legitimate and proper.

See also *Blankenship v. St. Paul Guardian Insurance Company*, 911 S.W.2d 95, 99 (Tex. App.—Tyler 1995, no writ); *St. Paul Guardian Insurance Company v. Luker*, 801 S.W.2d 614, 622 (Tex.App.—Texarkana 1990, no writ). The third and fourth points of error are overruled.

### The Directed Verdict

The evidence which was discussed under Points of Error Nos. 3 and 4 shows that the trial court correctly directed a verdict that appellants had failed to prove that their insurance company had violated the duty of "good faith and fair dealing" and that they failed to prove any violation of either statute. Appellants failed to prove the absence of a reasonable basis for denying or delaying the payment of appellants' claims; they failed to prove that the insurance company's liability had become "reasonably clear." *State Farm Fire & Casualty Company v. Simmons*, 963 S.W.2d 42, 44 (Tex.1998); *Universe Life Insurance Company v. Giles*, 950 S.W.2d 48, 79 (Tex.1997)(Enoch, J., concurring); *National Union Fire Insurance Company of Pittsburgh v. Dominguez*, 873 S.W.2d 373, 376 (Tex.1994); and *Lyons v. Millers Casualty Insurance Company of Texas*, 866 S.W.2d 597, 600 (Tex.1993). The fifth point of error is overruled.

The judgment of the trial court is affirmed.