NO. 07-01-0096-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 23, 2001

_____

IN THE INTEREST OF AMANDA RAE BULLOCK, A CHILD

_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 55,506-D; HONORABLE DON EMERSON, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

This appeal arises from the termination of the parental rights of appellants Holli Rene Sinclair (Holli) and Andy Lee Bullock (Andy) to their daughter Amanda Rae Bullock (Amanda). Holli and Andy have each perfected appeals and submitted separate briefs challenging the legal and factual sufficiency of the evidence supporting the trial court's judgment. For the reasons discussed below, we overrule those challenges and affirm the judgment of the trial court.

Amanda was born September 8, 1994. In a 1997 suit affecting the parent-child relationship, appellants were declared the parents of Amanda. Holli was named managing conservator and Andy was named possessory conservator. Based on allegations of physical abuse, the Department of Protective and Regulatory Services (the Department) took possession of Amanda on July 30, 1999, and filed a motion to modify the prior order. It sought temporary orders restricting the parents' possession of the child, and after a hearing, permanent modification of conservatorship.

In February 2000, the Department filed an amended petition seeking termination of Holli and Andy's parental rights. The petition alleged five grounds for termination, that they: 1) placed or allowed Amanda to remain in conditions which endangered her physical or emotional well-being, 2) engaged in conduct which endangered her physical or emotional well-being, 3) had been convicted of the death or serious injury of a child under section 22.04 of the Penal Code, 4) failed to comply with a court order setting conditions of reunification, and 5) used a controlled substance "in a manner that endangered the health and safety of the child(ren)."

The case was tried to a jury in November 2000. The sole ground for termination presented to the jury was whether appellants engaged in conduct or knowingly placed Amanda with persons who engaged in conduct which endangered her physical or emotional well-being. The jury found that the parental rights of both should be terminated. The trial court rendered an order of termination on December 19, 2000, and both parties timely perfected their respective appeals.

2

Termination of parental rights is governed by section 161.001 of the Texas Family Code (Vernon Supp. 2001). It requires the Department to establish, by clear and convincing evidence, one or more of the enumerated acts or omissions, and that termination be in the best interest of the child. *Id.* Here, the Department relied on section 161.001(1)(E). Clear and convincing evidence is that measure or degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). This is an intermediate standard falling between the preponderance of the evidence standard of ordinary civil proceedings and the standard of beyond a reasonable doubt of criminal proceedings. *Id.* This heightened burden is necessary because the termination of parental rights is a matter of constitutional dimensions. *Id.* at 846.

Our review of appellants' legal sufficiency challenges requires us to consider only the evidence supporting the trial court's finding, disregard evidence to the contrary and uphold the finding if there is any probative evidence to support it. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Although there has been some difference of opinion regarding the standard of review, we continue to adhere to the view that the standard of appellate review does not change when the burden to establish a fact is by clear and convincing evidence. *See In re M.D.S.*, 1 S.W.3d 190, 197 (Tex.App.--Amarillo 1999, no pet.). Nevertheless, in applying that standard, the weight of evidence necessary to support a verdict must be higher. *In re D. T.*, 34 S.W.3d 625, 632 (Tex.App.--Fort Worth 2000, no pet.). Therefore, in reviewing factual sufficiency challenges, we are to consider

3

all the evidence to determine whether reaching a firm belief or conviction that the allegation was true is contrary to the overwhelming weight of the evidence. To hold otherwise would nullify the heightened burden of proof required at trial.

Termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). While "endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987); *In re S.F.*, 32 S.W.3d 318, 321 (Tex.App.–San Antonio 2000, no pet.).

We first consider the challenges to the legal sufficiency of the evidence. The Department's evidence primarily consisted of a single factually specific act of physical harm by each parent and a course of conduct which, while not directed to Amanda, it contends threatened her physical or emotional well-being.

The State presented evidence that the Department became involved with the couple in April 1999, when Holli's son Billy set fire to Amanda's hair with a lighter and an aerosol can, prompting Andy to spank Billy severely. Holli believed Andy's response was excessive and called the police. As a result, Andy was arrested and subsequently convicted of injury to a child. In June of that year, Holli was arrested and convicted of assault based on an event where she restrained Amanda by holding her around the waist

4

and neck. The only evidence of physical harm to Amanda were "red marks" on her neck. In the same occurrence, Andy was charged with disorderly conduct.

The State also relies on the following evidence relevant to Andy. A caseworker testified that Holli told her Andy was abusive to the children, without specifying the conduct that formed the basis of that statement. Andy admitted that he had been arrested for domestic violence, but did not state when. Holli testified that on one occasion when she picked Amanda up after she had stayed with Andy and Andy's girlfriend, Amanda had numerous marks on her body. The Department introduced photos taken by Holli showing these injuries. There was evidence that Andy had committed unrelated offenses, including driving while his license was suspended, evading arrest and possession of marijuana. Andy admitted that he had been intoxicated in the presence of Amanda.

## Holli

Holli contends that the Department's evidence can be divided into three categories, failure to comply with the Department's requests after Amanda was removed, alcohol abuse and physical abuse. An examination of the record also shows that the Department relied on general instability in the household as evidence of a threat to Amanda's emotional well-being. In addition to Holli's conviction for assault on Amanda, the Department cites testimony of Dr. Mark Izzard, who related statements of Amanda that her parents hit each other and her mother had hit her.

5

In considering Dr. Izzard's testimony, however, we may not regard it as evidence that Holli struck Amanda, because the trial court instructed the jury that the evidence could only be considered to show the basis of Dr. Izzard's opinion and diagnosis and not for their truth. Dr. Izzard concluded that Amanda suffered physical and emotional harm in the care of her parents. He specifically diagnosed her as having attachment disorder and post traumatic stress disorder and cited the cause as "chronic history of bad parenting, . . . of abusive parenting, of instability and chaos in the home, domestic violence, and sexual abuse, I believe, by a brother." As noted above, there was other evidence that Holli and Andy physically fought, sometimes in the presence of Amanda.

The State also sought to present evidence that both parents were not cooperative with the Department's efforts to improve their parenting skills and reunify the family. The record does not fully support the Department's allegations. For example, the State cites Holli's refusal to submit to drug tests on four occasions. The uncontroverted evidence showed that on one request, Holli was unable to leave work. Another instance cited by the State involved Holli's "refusal" to give enough of a urine sample to test. The evidence shows Holli did not submit to testing on two occasions when the requests were made after scheduled visits with her children were cancelled. Holli completed a parenting class as requested by the Department. However, this evidence does not directly bear on the statutory ground for termination that Holli engaged in conduct which endangered Amanda's physical or emotional well-being.

6

## Physical Well-Being

The only evidence of physical injury to Amanda by Holli were the "red marks" left when Holli restrained her daughter. Although the jury also heard that Holli was convicted of injury to a child based on this occurrence, this single event causing minor injury cannot support termination of Holli's parental rights. *See Doyle v. Texas Dept. of Protective and Regulatory Services*, 16 S.W.3d 390, 398 (Tex.App.--El Paso 2000, pet. denied) (isolated instances of physical abuse did not support termination).

## Emotional Well-Being

Termination cases considering a parent's ability to provide a stable home environment are consistent in holding it is a factor to be considered, but is not, by itself, grounds for termination. *See Boyd,* 727 S.W.2d at 533 (metaphysical injury from less than ideal family environment will not support termination)*; Doyle,* 16 S.W.3d at 398 *(*mother's inability to provide stable employment or residence for children did not support termination); and *Ziegler v. Tarrant County Child Welfare Unit*, 680 S.W.2d 674, 678-79 (Tex.App.--Fort Worth 1984, writ ref'd n.r.e.) (mother's history of general instability, in combination with other factors, supported termination). The primary consideration is whether there is evidence that the instability caused, or was likely to cause, emotional harm. *Doyle*, 16 S.W.3d at 398 (no evidence of physical or emotional impact). Here, the testimony of Dr. Izzard was some evidence that the instability and domestic disputes harmed Amanda's emotional well-being. We find the evidence legally sufficient to support

7

a firm conviction or belief that both parents' conduct endangered Amanda's emotional well-being.

## Andy
## Physical Well-Being

The evidence supporting the Department's position that Andy endangered Amanda's physical well-being included his conviction for injury to a child arising from striking Billy,[1] the photographs of Amanda after she was left in the care of Andy and his girlfriend, and statements of Holli that he was abusive to the children. This evidence could support a firm conviction or belief that Andy's conduct or omissions created a risk to Amanda's physical well-being. *Boyd*, 727 S.W.2d at 534 (parent's course of conduct can support finding of endangerment). This holding dispenses with the need to address the legal sufficiency of the evidence that he endangered Amanda's emotional well-being.

## Factual Sufficiency Challenges

Holli and Andy next challenge the factual sufficiency of the evidence. A finding may be overturned on the basis of factual sufficiency only if the evidence supporting the finding is so weak or contrary to the overwhelming weight of the evidence as to make a finding clearly wrong and manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). When reversing a judgment based on factual insufficiency, we must detail the

---

[1]At oral argument, Andy placed significant emphasis on the fact that his conduct toward Billy was in response to Billy's endangering Amanda's safety. However, his conviction based on that conduct is some evidence that Andy's response was excessive.

8

relevant evidence and clearly state why the jury's finding is clearly against that evidence. *Id.*

## Holli

Holli emphasizes her participation in programs set out by the Department to the best of her ability. These included submitting to several drug screenings and attending parenting classes. She attributes any isolated failures to economic necessities, such as demands of work and lack of transportation. Holli challenges the Department's claim of physical abuse in the incident giving rise to her arrest for injury to a child.

Holli's participation in programs arranged by the Department after Amanda was removed from the home does not directly affect the determination of whether she engaged in conduct endangering Amanda's well-being. She has failed to point to any evidence controverting Dr. Izzard's opinion that the lack of stability and effective parenting skills have caused emotional harm to Amanda. Without such evidence, the jury's finding cannot be against the great weight of the evidence.

## Andy

Andy also cites evidence that he participated in each of the programs to which he was referred by the Department, including alcohol treatment, anger management, parenting classes and submitting to random urinalysis testing. He asserts there was no testimony that he endangered Amanda's well-being "during his possession periods with

Amanda." This argument ignores the testimony of Dr. Izzard, and mistakenly assumes that emotional harm cannot result from a parent's absence. He also challenges the credibility of Dr. Izzard's opinion, which was reached without having ever visited with either parent.

This evidence does not render the jury's finding contrary to the overwhelming weight of the evidence. Andy's conduct after Amanda was removed by the Department does not controvert the evidence presented concerning his prior acts and omissions, which was the only evidence relevant to the ground of termination alleged. Additionally, it is within the exclusive province of the jury to determine the weight and credibility of witnesses. The jury is also free to believe all, part, or none of a witness's testimony. *Every v. United Services Auto Assn Cas. Ins. Co.*, 979 S.W.2d 818, 822 (Tex.App.--Eastland 1998, pet. denied).

Best Interest of the Child

Finally, both parents challenge the second element necessary for termination of parental rights, that termination be in the best interest of the child. In *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976), our supreme court set out a non-exclusive list of factors to be considered in determining best interest of the child. They include: 1) the desires of the child; 2) the emotional and physical need of the child now and in the future; 3) the emotional and physical danger of the child now and in the future; 4) the parental abilities of the individuals seeking custody; 5) the programs available to assist these individuals to promote the child's best interest; 6) the plans for the child by the party seeking custody; 7) the stability of the home or proposed placement; 8) the act/omission of the parent which

10

may indicate that the existing parent-child relationship is not proper; and 9) any excuse for the acts/omissions of the parent.

Holli's brief does not address any of these elements or urge other elements to be considered. Andy's brief merely recites the factors and states that "the evidence showed a loving relationship between Amanda and her father and all her needs were being met when she was in the home with him." In support, he cites Holli's testimony that they had provided for the children. This testimony was controverted by that of Dr. Izzard and the social service workers. It was within the province of the jury to resolve this conflict and we cannot say its resolution was against the great weight of the evidence.

We overrule each of appellants' points of error and affirm the judgment of the trial court.

John T. Boyd
Chief Justice

Do not publish.