NO. 07-01-0096-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A 



OCTOBER 23, 2001



______________________________




IN THE INTEREST OF AMANDA RAE BULLOCK, A CHILD






_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 55,506-D; HONORABLE DON EMERSON, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 This appeal arises from the termination of the parental rights of appellants Holli
Rene Sinclair (Holli) and Andy Lee Bullock (Andy) to their daughter Amanda Rae Bullock
(Amanda). Holli and Andy have each perfected appeals and submitted separate briefs
challenging the legal and factual sufficiency of the evidence supporting the trial court's
judgment. For the reasons discussed below, we overrule those challenges and affirm the
judgment of the trial court.

 Amanda was born September 8, 1994. In a 1997 suit affecting the parent-child
relationship, appellants were declared the parents of Amanda. Holli was named managing
conservator and Andy was named possessory conservator. Based on allegations of
physical abuse, the Department of Protective and Regulatory Services (the Department)
took possession of Amanda on July 30, 1999, and filed a motion to modify the prior order. 
It sought temporary orders restricting the parents' possession of the child, and after a
hearing, permanent modification of conservatorship.

 In February 2000, the Department filed an amended petition seeking termination of
Holli and Andy's parental rights. The petition alleged five grounds for termination, that
they: 1) placed or allowed Amanda to remain in conditions which endangered her physical
or emotional well-being, 2) engaged in conduct which endangered her physical or
emotional well-being, 3) had been convicted of the death or serious injury of a child under
section 22.04 of the Penal Code, 4) failed to comply with a court order setting conditions
of reunification, and 5) used a controlled substance "in a manner that endangered the
health and safety of the child(ren)." 

 The case was tried to a jury in November 2000. The sole ground for termination
presented to the jury was whether appellants engaged in conduct or knowingly placed
Amanda with persons who engaged in conduct which endangered her physical or
emotional well-being. The jury found that the parental rights of both should be terminated. 
The trial court rendered an order of termination on December 19, 2000, and both parties
timely perfected their respective appeals.

 Termination of parental rights is governed by section 161.001 of the Texas Family
Code (Vernon Supp. 2001). It requires the Department to establish, by clear and
convincing evidence, one or more of the enumerated acts or omissions, and that
termination be in the best interest of the child. Id. Here, the Department relied on section
161.001(1)(E). Clear and convincing evidence is that measure or degree of proof which
produces in the mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established. In re G.M., 596 S.W.2d 846, 847 (Tex. 1980). This
is an intermediate standard falling between the preponderance of the evidence standard
of ordinary civil proceedings and the standard of beyond a reasonable doubt of criminal
proceedings. Id. This heightened burden is necessary because the termination of parental
rights is a matter of constitutional dimensions. Id. at 846. 

 Our review of appellants' legal sufficiency challenges requires us to consider only
the evidence supporting the trial court's finding, disregard evidence to the contrary and
uphold the finding if there is any probative evidence to support it. In re King's Estate, 150
Tex. 662, 244 S.W.2d 660, 661 (1951). Although there has been some difference of
opinion regarding the standard of review, we continue to adhere to the view that the
standard of appellate review does not change when the burden to establish a fact is by
clear and convincing evidence. See In re M.D.S., 1 S.W.3d 190, 197 (Tex.App.--Amarillo
1999, no pet.). Nevertheless, in applying that standard, the weight of evidence necessary
to support a verdict must be higher. In re D. T., 34 S.W.3d 625, 632 (Tex.App.--Fort Worth
2000, no pet.). Therefore, in reviewing factual sufficiency challenges, we are to consider
all the evidence to determine whether reaching a firm belief or conviction that the allegation
was true is contrary to the overwhelming weight of the evidence. To hold otherwise would
nullify the heightened burden of proof required at trial. 

 Termination proceedings should be strictly scrutinized, and involuntary termination
statutes are strictly construed in favor of the parent. Holick v. Smith, 685 S.W.2d 18, 20
(Tex. 1985). While "endanger" means more than a threat of metaphysical injury or the
possible ill effects of a less-than-ideal family environment, it is not necessary that the
conduct be directed at the child or that the child actually suffers injury. Texas Department
of Human Services v. Boyd, 727 S.W.2d 531, 533 (Tex.1987); In re S.F., 32 S.W.3d 318,
321 (Tex.App.--San Antonio 2000, no pet.). 

 We first consider the challenges to the legal sufficiency of the evidence. The
Department's evidence primarily consisted of a single factually specific act of physical harm
by each parent and a course of conduct which, while not directed to Amanda, it contends
threatened her physical or emotional well-being. 

 The State presented evidence that the Department became involved with the couple
in April 1999, when Holli's son Billy set fire to Amanda's hair with a lighter and an aerosol
can, prompting Andy to spank Billy severely. Holli believed Andy's response was
excessive and called the police. As a result, Andy was arrested and subsequently
convicted of injury to a child. In June of that year, Holli was arrested and convicted of
assault based on an event where she restrained Amanda by holding her around the waist
and neck. The only evidence of physical harm to Amanda were "red marks" on her neck.
In the same occurrence, Andy was charged with disorderly conduct.

 The State also relies on the following evidence relevant to Andy. A caseworker
testified that Holli told her Andy was abusive to the children, without specifying the conduct
that formed the basis of that statement. Andy admitted that he had been arrested for
domestic violence, but did not state when. Holli testified that on one occasion when she
picked Amanda up after she had stayed with Andy and Andy's girlfriend, Amanda had
numerous marks on her body. The Department introduced photos taken by Holli showing
these injuries. There was evidence that Andy had committed unrelated offenses, including
driving while his license was suspended, evading arrest and possession of marijuana. 
Andy admitted that he had been intoxicated in the presence of Amanda. 

Holli

 Holli contends that the Department's evidence can be divided into three categories,
failure to comply with the Department's requests after Amanda was removed, alcohol
abuse and physical abuse. An examination of the record also shows that the Department
relied on general instability in the household as evidence of a threat to Amanda's emotional
well-being. In addition to Holli's conviction for assault on Amanda, the Department cites
testimony of Dr. Mark Izzard, who related statements of Amanda that her parents hit each
other and her mother had hit her. 

 In considering Dr. Izzard's testimony, however, we may not regard it as evidence
that Holli struck Amanda, because the trial court instructed the jury that the evidence could
only be considered to show the basis of Dr. Izzard's opinion and diagnosis and not for their
truth. Dr. Izzard concluded that Amanda suffered physical and emotional harm in the care
of her parents. He specifically diagnosed her as having attachment disorder and post
traumatic stress disorder and cited the cause as "chronic history of bad parenting, . . . of
abusive parenting, of instability and chaos in the home, domestic violence, and sexual
abuse, I believe, by a brother." As noted above, there was other evidence that Holli and
Andy physically fought, sometimes in the presence of Amanda.

 The State also sought to present evidence that both parents were not cooperative
with the Department's efforts to improve their parenting skills and reunify the family. The
record does not fully support the Department's allegations. For example, the State cites
Holli's refusal to submit to drug tests on four occasions. The uncontroverted evidence
showed that on one request, Holli was unable to leave work. Another instance cited by the
State involved Holli's "refusal" to give enough of a urine sample to test. The evidence
shows Holli did not submit to testing on two occasions when the requests were made after
scheduled visits with her children were cancelled. Holli completed a parenting class as
requested by the Department. However, this evidence does not directly bear on the
statutory ground for termination that Holli engaged in conduct which endangered 
Amanda's physical or emotional well-being. 




Physical Well-Being


 The only evidence of physical injury to Amanda by Holli were the "red marks" left
when Holli restrained her daughter. Although the jury also heard that Holli was convicted
of injury to a child based on this occurrence, this single event causing minor injury cannot
support termination of Holli's parental rights. See Doyle v. Texas Dept. of Protective and
Regulatory Services, 16 S.W.3d 390, 398 (Tex.App.--El Paso 2000, pet. denied) (isolated
instances of physical abuse did not support termination).

Emotional Well-Being


 Termination cases considering a parent's ability to provide a stable home
environment are consistent in holding it is a factor to be considered, but is not, by itself,
grounds for termination. See Boyd, 727 S.W.2d at 533 (metaphysical injury from less than
ideal family environment will not support termination); Doyle, 16 S.W.3d at 398 (mother's
inability to provide stable employment or residence for children did not support
termination); and Ziegler v. Tarrant County Child Welfare Unit, 680 S.W.2d 674, 678-79
(Tex.App.--Fort Worth 1984, writ ref'd n.r.e.) (mother's history of general instability, in
combination with other factors, supported termination). The primary consideration is
whether there is evidence that the instability caused, or was likely to cause, emotional
harm. Doyle, 16 S.W.3d at 398 (no evidence of physical or emotional impact). Here, the
testimony of Dr. Izzard was some evidence that the instability and domestic disputes
harmed Amanda's emotional well-being. We find the evidence legally sufficient to support
a firm conviction or belief that both parents' conduct endangered Amanda's emotional well-being.Andy
Physical Well-Being



 The evidence supporting the Department's position that Andy endangered
Amanda's physical well-being included his conviction for injury to a child arising from
striking Billy, (1) the photographs of Amanda after she was left in the care of Andy and his
girlfriend, and statements of Holli that he was abusive to the children. This evidence could
support a firm conviction or belief that Andy's conduct or omissions created a risk to
Amanda's physical well-being. Boyd, 727 S.W.2d at 534 (parent's course of conduct can
support finding of endangerment). This holding dispenses with the need to address the
legal sufficiency of the evidence that he endangered Amanda's emotional well-being.

Factual Sufficiency Challenges

 Holli and Andy next challenge the factual sufficiency of the evidence. A finding may
be overturned on the basis of factual sufficiency only if the evidence supporting the finding 
is so weak or contrary to the overwhelming weight of the evidence as to make a finding
clearly wrong and manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986). When reversing a judgment based on factual insufficiency, we must detail the
relevant evidence and clearly state why the jury's finding is clearly against that evidence. 
Id.

Holli


 Holli emphasizes her participation in programs set out by the Department to the best
of her ability. These included submitting to several drug screenings and attending
parenting classes. She attributes any isolated failures to economic necessities, such as
demands of work and lack of transportation. Holli challenges the Department's claim of
physical abuse in the incident giving rise to her arrest for injury to a child. 

 Holli's participation in programs arranged by the Department after Amanda was
removed from the home does not directly affect the determination of whether she engaged
in conduct endangering Amanda's well-being. She has failed to point to any evidence
controverting Dr. Izzard's opinion that the lack of stability and effective parenting skills have
caused emotional harm to Amanda. Without such evidence, the jury's finding cannot be
against the great weight of the evidence. 

Andy


 Andy also cites evidence that he participated in each of the programs to which he
was referred by the Department, including alcohol treatment, anger management,
parenting classes and submitting to random urinalysis testing. He asserts there was no
testimony that he endangered Amanda's well-being "during his possession periods with
Amanda." This argument ignores the testimony of Dr. Izzard, and mistakenly assumes that
emotional harm cannot result from a parent's absence. He also challenges the credibility
of Dr. Izzard's opinion, which was reached without having ever visited with either parent. 

 This evidence does not render the jury's finding contrary to the overwhelming weight
of the evidence. Andy's conduct after Amanda was removed by the Department does not
controvert the evidence presented concerning his prior acts and omissions, which was the
only evidence relevant to the ground of termination alleged. Additionally, it is within the
exclusive province of the jury to determine the weight and credibility of witnesses. The jury
is also free to believe all, part, or none of a witness's testimony. Every v. United Services
Auto Assn Cas. Ins. Co., 979 S.W.2d 818, 822 (Tex.App.--Eastland 1998, pet. denied).

Best Interest of the Child

 Finally, both parents challenge the second element necessary for termination of
parental rights, that termination be in the best interest of the child. In Holley v. Adams, 544
S.W.2d 367, 372 (Tex. 1976), our supreme court set out a non-exclusive list of factors to
be considered in determining best interest of the child. They include: 1) the desires of the
child; 2) the emotional and physical need of the child now and in the future; 3) the
emotional and physical danger of the child now and in the future; 4) the parental abilities
of the individuals seeking custody; 5) the programs available to assist these individuals to
promote the child's best interest; 6) the plans for the child by the party seeking custody; 7)
the stability of the home or proposed placement; 8) the act/omission of the parent which
may indicate that the existing parent-child relationship is not proper; and 9) any excuse for
the acts/omissions of the parent. 

 Holli's brief does not address any of these elements or urge other elements to be
considered. Andy's brief merely recites the factors and states that "the evidence showed
a loving relationship between Amanda and her father and all her needs were being met
when she was in the home with him." In support, he cites Holli's testimony that they had
provided for the children. This testimony was controverted by that of Dr. Izzard and the
social service workers. It was within the province of the jury to resolve this conflict and we
cannot say its resolution was against the great weight of the evidence. 

 We overrule each of appellants' points of error and affirm the judgment of the trial
court.


 John T. Boyd

 Chief Justice


Do not publish.
1. At oral argument, Andy placed significant emphasis on the fact that his conduct
toward Billy was in response to Billy's endangering Amanda's safety. However, his
conviction based on that conduct is some evidence that Andy's response was excessive.